**UNITED STATES of America,
Plaintiff,**

v.

**Miles Levi EVANS and Gwendolyn
Pearl Thompson, Defendants.**

**No. CR 06 54 M DWM.**

United States District Court,
D. Montana,
Missoula Division.

Jan. 17, 2007.

Marcia Hurd, U.S. Attorneys Office, Billings, MT, for Plaintiff.

Martin W. Judnich, Attorney at Law, Doreen Antenor, Bailey & Antenor, Missoula, MT, for Defendants.

## ORDER

MOLLOY, Chief Judge.

### I. Introduction

This child pornography case requires the Court to resolve the validity of an unsigned search warrant. Officers applied for a warrant to search the residence of Defendants Miles Evans and Gwendolyn Thompson. The magistrate signed the search warrant application and affidavit but did not sign the search warrant itself. During a subsequent search, officers seized evidence, and obtained statements, incriminating Defendants in possessing, receiving, and distributing child pornography. Defendants seek suppression of this evidence. The government opposes Defendants' motions, claiming any error in the warrant was caused by the magistrate.

The government maintains officers executing an unsigned warrant are entitled to rely in good faith on its validity. An unsigned warrant, however, is not a warrant within the meaning of the Fourth Amendment. An unsigned warrant is a blank paper and officers cannot reasonably rely on such a glaring deficiency as authorization to search. For the reasons set forth below, Defendants' motions to suppress are granted.

## II. Factual Background

The Court held a suppression hearing on January 10, 2007. Based on the testimony and evidence presented at that hearing, the Court makes the following factual findings:

On April 27, 2006, Immigration and Customs Enforcement Special Agent Troy Capser appeared before United States Magistrate Judge Leif Erickson to apply for a warrant to search Defendants' residence. Agent Capser presented Judge Erickson with an affidavit summarizing the investigation of Defendants for possession, receipt, and distribution of child pornography. Judge Erickson placed Agent Capser under oath and had him sign the search warrant application and affidavit. Judge Erickson then read and signed the application and affidavit himself in two separate places. See Government's Exh. 1. According to the text above Judge Erickson's signature on the search warrant application and affidavit, his signature indicated only that the document had been signed and sworn to by Agent Capser in Judge Erickson's presence. Id. Judge Erickson did not sign the search warrant

itself or indicate on the warrant the date before which it had to be executed. See Government's Exh. 2. Judge Erickson testified his failure to sign the warrant was an oversight. He also indicated it was his usual practice to sign a search warrant application and affidavit only when he also intended to issue a warrant.[1]

When Agent Capser left Judge Erickson's chambers approximately ten minutes after he arrived, he believed the search warrant had been signed. According to Agent Capser, Judge Erickson did not give any indication during their encounter to suggest probable cause for the search did not exist. After leaving Judge Erickson's chambers, Agent Capser made copies of the search warrant application and affidavit and the unsigned warrant and drove to Defendants' residence with several other law enforcement officers to conduct the search.[2] None of the officers who conducted the search reviewed the warrant before executing it.

During the search, officers seized various computer equipment later found to contain images of child pornography. Officers also questioned Defendants after giving them the Miranda warnings. Defendants admitted to using their computers to view child pornography and indicated they were in the process of downloading child pornography images when the officers arrived to conduct the search. It is unclear from the testimony adduced at the hearing exactly when during the search Defendants were questioned.[3]

After the officers completed the search, Agent Capser went to his vehicle to obtain

1. Judge Erickson does not remember the specific circumstances surrounding the request for a warrant in this case. Furthermore, the warrant is measured by its four corners.

2. The Search Warrant Return indicates the warrant was executed several months after Judge Erickson signed the search warrant

application and affidavit, on June 21, 2006. See Government's Exh. 2.

3. The two officers that interviewed Defendant Thompson did not appear at the suppression hearing to testify.

a copy of the search warrant to leave with Defendants. Only then did he notice the search warrant was unsigned. Instead of leaving a copy of the unsigned warrant with Defendants, Agent Capser left a copy of the search warrant application and affidavit. The Agent testified he left this document because it was signed by Judge Erickson and he wanted to assure Defendants the search was legally authorized.[4] The officers also left a copy of an inventory sheet, listing the items that had been seized from the residence.

Defendants were subsequently charged in a four-count indictment with distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2); receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2); possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); and a related forfeiture count. Defendants have each filed a motion to suppress evidence seized during the search. Defendant Thompson's motion also requests suppression of statements she made to officers during the search.

## III. Analysis

### A. The Search

The Fourth Amendment provides, in relevant part, "no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In *Groh v. Ramirez*, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004), the Supreme Court addressed the portion of this Amendment requiring a warrant to particularly describe the items to be seized. Law enforcement officers in *Groh* obtained a warrant to search a residence they believed contained a stockpile of firearms. *Id.* at 554, 124 S.Ct. 1284. The

warrant failed to identify any of the items officers intended to seize. *Id.* Instead, in the portion of the warrant calling for a description of items to be seized, the officer requesting the warrant mistakenly inserted a description of the residence to be searched. *Id.* The magistrate signed the warrant without noticing the error. *Id.* The owners of the residence subsequently brought a civil suit against the officers who executed the warrant, alleging a violation of their Fourth Amendment rights. *Id.* at 555, 124 S.Ct. 1284.

The Supreme Court held "[t]he warrant was plainly invalid" because it completely failed to describe the items to be seized as required by the text of the Fourth Amendment. *Id.* at 557, 124 S.Ct. 1284. Citing *McDonald v. United States*, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948), the Court rejected the officer's claim that a description of the items to be seized in the search warrant application was sufficient to satisfy the Fourth Amendment. *Groh*, 540 U.S. at 557, 124 S.Ct. 1284. *McDonald* stressed that the warrant requirement is not a mere formality. 335 U.S. at 455, 69 S.Ct. 191. Instead, the "presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police.... so that an objective mind might weigh the need to invade [the] privacy [of the home] in order to enforce the law." *Id.* at 455–56, 69 S.Ct. 191. Applying this reasoning to the facts in *Groh*, the Court found the failure of the warrant itself to set forth the particular items to be seized provided no "written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit." *Groh*, 540 U.S. at 560, 124 S.Ct. 1284. Because "the warrant did not de-

---

4. Although Agent Casper was not questioned directly on this issue, it appears the unsigned search warrant was never shown to Defendants.

scribe the items to be seized *at all*," the Court concluded the search was "warrantless." *Id.* at 558, 124 S.Ct. 1284.

■■■ The search in the instant case was similarly warrantless. In addition to the particularly requirement addressed in *Groh*, the text of the Fourth Amendment demands that a warrant be "issue[d]." U.S. Const. amend. IV; *see also United States v. Arellano–Ochoa*, 461 F.3d 1142, 1145 (9th Cir.2006). Issuance serves to demonstrate that a neutral and detached magistrate has reviewed the warrant application and affidavit and made an independent and objective determination that probable cause exists to justify the search. *Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *Skoog v. County of Clackamas*, 469 F.3d 1221, 1230 (9th Cir.2006). The magistrate's signature, or other indication of authorization, on the face of the warrant also assures the individual whose property is being searched or seized of the lawful authority of the executing officers. *United States v. Chadwick*, 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), *abrogated on other grounds, California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). If a warrant is not properly issued, this Court, and the individual whose privacy has been invaded, has no assurance that the power of the officers conducting the search was checked in advance by a neutral and detached magistrate. Because "the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home," *McDonald*, 335 U.S. at 455–56, 69 S.Ct. 191, a warrant that is not issued is no warrant at all. *See Groh*, 540 U.S. at 559, 124 S.Ct. 1284.

The Fourth Amendment's issuance requirement may not necessitate a magistrate's signature on the warrant. *See United States v. Hondras*, 296 F.3d 601, 602 (7th Cir.2002) ("Issuing a warrant is not synonymous with signing a warrant."); Fed.R.Crim.P. 41 (describing procedure for issuing search warrants, but only explicitly requiring a magistrate to sign the warrant when it is authorized by telephone). It does, however, demand that the warrant contain some indication that the search is officially authorized. *See* Black's Law Dictionary 850 (8th ed.2004) (defining "issue" as "[t]o be put forth officially"). The warrant at issue in this case lacked any indication that it was officially authorized. It was not signed by the magistrate. It did not indicate the date before which the search had to be conducted. *See* Fed.R.Crim.P. 41(e)(2)(A) (requiring warrant to "command the officer to ... execute the warrant within a specified time no longer than 10 days."). And it did not contain a case number or stamp indicating it had been filed with the Clerk of Court. *See* Guide to Judiciary Policies and Procedures, Administrative Office of the United States Courts, Volume 4, § 3.01(d) (noting, in many courts, a copy of the search warrant is sent to the clerk's office and given a miscellaneous case number when the government agent is given the original search warrant).[5]

■■■ The government suggests the warrant was officially authorized because Judge Erickson signed the search warrant application and affidavit. Judge Erickson's signature on this document, however, does not serve the same purpose as his signature on the search warrant itself. A magistrate's signature on a search warrant indicates the search warrant application

---

5. Because the warrant officers relied on to search Defendants' residence did not contain any indication of official authorization, the Court need not decide what type or types of authorization satisfy the Fourth Amendment.

and affidavit presented to him contain probable cause to justify the search requested. The text above the blank for the magistrate's signature on the search warrant in this case states "I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant." Government's Exh. 2. A magistrate's signature on the search warrant application and affidavit, on the other hand, merely indicates the document was signed and sworn to by the requesting officer in the magistrate's presence. Accordingly, the text above the blank for the magistrate's signature on the warrant application states "[s]worn to before me, and subscribed in my presence." Government's Exh. 1. Judge Erickson testified he would not generally sign a search warrant application and affidavit unless he intended to issue a warrant. Such a practice, however, is not universal. Moreover, if a magistrate's signature on a search warrant application and affidavit was sufficient to satisfy the Fourth Amendment, the language of that Amendment, which requires issuance of a "warrant," would become meaningless. Because Judge Erickson's signature on the search warrant application and affidavit provides no assurance he found probable cause and officially authorized the search, it does not satisfy the Fourth Amendment's issuance requirement. *See Groh,* 540 U.S. at 557–561, 124 S.Ct. 1284 (concluding description of items to be seized on search warrant application was insufficient to satisfy Fourth Amendment's particularity requirement because it did not provide assurance that magistrate found probable cause to seize every item listed in the application).

The government also urges this Court to uphold the validity of the unsigned warrant because Judge Erickson intended to issue the warrant. To divine Judge Erickson's intent, the government again relies on Judge Erickson's post-factum testimony that it was his usual practice to sign a search warrant application and affidavit only when he also intended to issue a warrant. This Court, however, rejected a similar argument in *United States v. Robinson,* CR 04–32–BU–DWM (D.Mont. February 28, 2005). Officers in *Robinson* applied for a warrant to search the defendant's pick-up truck and residence for evidence of drug trafficking. *Id.* at 2. The warrant was signed by a state court judge, indicating probable cause existed to search both the truck and the residence. *Id.* at 3. Nevertheless, the portion of the warrant commanding the search only referenced the truck. *Id.* Officers executing the warrant searched both the truck and the residence. *Id.* at 4. The defendant moved to suppress evidence seized from her residence, and the government contended the omission of the residence in the command line of the search warrant was merely a "cut and paste" error that did not require suppression. *Id.* at 2. This Court rejected the government's argument, noting:

> There is no authority empowering a reviewing court to find through divination that the issuing judge meant to authorize the search of a residence where the warrant on its face fails to authorize such a search. The failure to command a search of the residence was almost certainly a mistake, but not one for this Court to correct. The prosecution would have the Court take the view that the Fourth Amendment is not such a stickler as to demand that a search be explicitly authorized by a warrant. Where fundamental rights are at stake, however, the Court is not inclined to impute to the Constitution such lenience.

*Id.* at 10.

Judge Erickson may very well have intended to sign the search warrant at issue

in this case. Nevertheless, the fact remains the warrant was not signed and there was no ten-day limit posted on its face. This Court is unwilling to accept the potential repercussions of adopting the forgiving interpretation of the Fourth Amendment urged by the government. If a reviewing court can speculate about what a magistrate intended to do, what prevents it from surmising what a magistrate would have done? Why not permit officers to come before this Court after a search has been conducted to seek admission of seized evidence on the ground that if a warrant had been presented to a magistrate before the search, the magistrate would have issued the warrant? Absent an exception, the Fourth Amendment requires a probable cause determination to be made and issued by a magistrate before officers invade a person's privacy. If the right to privacy is too precious to entrust to the discretion of officers who detect crime, it is similarly too precious to entrust to after-the-fact conjecture about a magistrate's intentions. *McDonald*, 335 U.S. at 455–56, 69 S.Ct. 191; *see also Robinson*, CR 04–32–BU–DWM, at 10. Because the warrant in this case did not provide any indication that it was officially authorized, the search of Defendants' residence was warrantless in violation of the Fourth Amendment.[6]

### B. The *Leon* Good Faith Exception

The government maintains, even if the search violated the Fourth Amendment, evidence obtained during the search should not be suppressed because the good faith exception to the exclusionary rule applies. In *United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 468 U.S. 897 (1984), the Supreme Court held evidence obtained pursuant to a search warrant la-

ter determined to be invalid need not be suppressed if the officers executing the warrant reasonably believed the warrant was valid. To benefit from the *Leon* good faith exception, the government must prove the officers' reliance on the invalid search warrant was objectively reasonable. *United States v. Kow,* 58 F.3d 423, 428 (9th Cir.1995). Relying on *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), the government argues the officers' reliance on the unsigned warrant in this case was objectively reasonable because the failure to sign the warrant was merely a clerical mistake.

In *Sheppard,* an officer applied for a search warrant in the course of a homicide investigation. *Id.* at 984–85, 104 S.Ct. 3424. Because the officer was unable to locate a warrant form for homicide searches, he provided the magistrate with an altered narcotics search warrant form. *Id.* at 985, 104 S.Ct. 3424. The officer informed the magistrate the form had been altered. *Id.* at 986, 104 S.Ct. 3424. After the magistrate himself searched unsuccessfully for a more suitable form, he told the officer he would make the necessary changes to the narcotics search form so as to provide a proper search warrant. *Id.* at 986, 104 S.Ct. 3424. The magistrate, however, forgot to alter several portions of the form, resulting in a warrant that authorized a search for narcotics. *Id.* Although the warrant failed to provide an accurate description of the items to be seized, the Supreme Court refused to suppress evidence obtained during the search. Applying the *Leon* good faith exception to the exclusionary rule, the Court concluded the officer's reliance on the warrant was objectively reasonable because the magistrate had assured him that all necessary

---

**6.** The government does not contend the search was permitted under an exception to the warrant requirement.

changes were made to the warrant form. *Id.* at 989–91, 104 S.Ct. 3424. Reasoning that "the exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges," the court "refuse[d] to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested." *Id.* at 989–90, 104 S.Ct. 3424. The government urges this Court to reach the same result here.

*Sheppard,* however, is distinguishable from this case. Most obviously, the search in *Sheppard* was conducted pursuant to a warrant, whereas the search here was not. Although the warrant in *Sheppard* did not adequately describe the items to be seized, it was issued by a magistrate. Officers therefore had an officially authorized warrant entitling them to search. In this case, officers had only a piece of paper. The *Leon* good faith exception may possibly excuse a deficiency in the language of a warrant, but it does not apply to excuse the absence of a warrant. *Leon,* 468 U.S. at 922, 104 S.Ct. 3405 (describing exception as applying where officers rely on a search warrant later declared to be invalid).

Even if the search of Defendants' residence was not warrantless, the *Leon* good faith exception does not apply. An officer's reliance on an invalid warrant (as opposed to no warrant at all) must be objectively reasonable before the government can claim the benefit of the good faith exception. Reliance on an unsigned warrant is not objectively reasonable. *Groh* is again instructive in this regard.

After determining the warrant in *Groh,* which completely failed to describe the items to be seized, was unconstitutional, the Court concluded the officer's reliance on the warrant was not objectively reasonable.[7] 540 U.S. at 563–65, 124 S.Ct. 1284. The Court observed "even a cursory reading of the warrant in this case-perhaps just a simple glance-would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal." *Id.* at 564, 124 S.Ct. 1284. The Court refused to apply the *Leon* good faith exception under such circumstances. *Id.* at 565, 124 S.Ct. 1284 (noting the exception does not apply when a warrant is "so facially deficient ... that the executing officers cannot reasonably presume it to be valid"). The Court also rejected the officer's argument, based on *Sheppard,* that he was immune from liability because any constitutional error was committed by the magistrate. The Court reasoned, the warrant in *Groh* was so patently defective, it was unreasonable for the officer to rely on it. *Id.* at 561 n. 4, 124 S.Ct. 1284. In so holding, the Court acknowledged officers executing a search warrant have a duty to "make sure that they have a proper warrant that in fact authorizes the search and seizure they are about to conduct." *Id.* at 563 n. 6, 124 S.Ct. 1284.

The government's reliance on *Sheppard* in this case is similarly unavailing. An unsigned warrant is so patently defective that it is objectively unreasonable for officers to rely on it. Moreover, unlike the officer in *Sheppard,* Agent Capser did not receive any assurances from Judge Erick-

---

7. The Court made this determination in the context of a qualified immunity analysis. *Groh v. Ramirez,* 540 U.S. 551, 563, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004). Nevertheless, the standard of objective reasonableness used to determine an officer's entitlement to qualified immunity is the same as the standard applied in determining the applicability of the *Leon* good faith exception. *Id.* at 565 n. 8, 124 S.Ct. 1284. It is therefore appropriate to rely on *Groh*'s analysis to decide this case.

son that the warrant was proper.[8] Instead, as in *Groh*, a cursory glance at the warrant would have revealed the absence of the magistrate's signature. In fact, the first time Agent Capser looked at the warrant after leaving Judge Erickson's chambers, he noticed it was not signed. After making this observation, Agent Capser decided not to leave a copy of the unsigned warrant with Defendants, and instead, left a copy of the signed search warrant application and affidavit. Agent Capser's behavior indicates he knew something was amiss. In fact, to his credit, Agent Capser candidly testified he left the signed document in an attempt to assure Defendants the search was officially authorized. Under the circumstances, Agent Capser could have attempted to contact Judge Erickson or another magistrate to obtain a properly issued warrant. *See* Fed.R.Crim.P. 41(e)(3) (describing procedure for obtaining a telephonic warrant). Instead, he called the U.S. Attorney's office and was advised to do nothing about the deficiency on the theory that the harm was done. Because the unsigned warrant was patently deficient, the officers' reliance on it to justify the search of Defendants' residence was not objectively reasonable.[9] The evidence obtained pursuant to the search therefore must be suppressed. To hold otherwise would be to subsume the warrant requirement of the Fourth Amendment within the good faith exception.

### C. Thompson's Statements

▆▆▆▆ Defendant Thompson also seeks suppression of statements she made to officers during the search of her residence as fruits of the poisonous tree.[10] The exclusionary rule requires suppression of statements obtained as a product of an illegal search. Statements are not the product of an illegal search merely because they would not have been made but for the illegal search. *Brown v. Illinois*, 422 U.S. 590, 599, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Rather, the court must find a causal connection between the illegal search and the statements sought to be suppressed. *United States v. Crawford*, 372 F.3d 1048, 1054 (2004). Under this standard, statements obtained by exploitation of an illegal search are suppressed;

**8.** Agent Capser testified Judge Erickson never gave him the impression the search warrant application and affidavit lacked probable cause. He did not testify that Judge Erickson assured him the warrant was valid.

**9.** Although the parties do not cite it in their briefs, the Fifth Circuit applied the *Leon* good faith exception in a case similar to the one presently before this Court. *United States v. Kelley*, 140 F.3d 596 (5th Cir.1998). Relying on *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984) and *United States v. Beaumont*, 972 F.2d 553 (5th Cir.1992), the Fifth Circuit concluded the executing officer's reliance on an unsigned warrant was objectively reasonable. *Kelley*, 140 F.3d at 602–603. The court reasoned the warrant was unquestionably supported by probable cause and the lack of a signature was due to a mistake by the magistrate, not the officers. *Id.* at 603.

*Kelley* is not controlling authority in this Court. Its persuasive value is also severely limited because it was handed down before the Supreme Court's decision in *Groh*. Therefore, the Fifth Circuit did not have the benefit of the Supreme Court's language distinguishing *Sheppard* in *Groh* when it chose to rely on *Sheppard*. Moreover, the reasoning utilized in the second case relied on by the Fifth Circuit in *Kelley* was effectively overruled by *Groh. See Beaumont*, 972 F.2d at 562 (applying *Leon* good faith exception to uphold admissibility of evidence seized pursuant to warrant that failed the particularity requirement because the warrant could have been made valid with the insertion of the phrase "see attached affidavit").

**10.** Defendant Evans does not raise the issue of suppression of his statements to officers, and thus, the admissibility of those statements will not be addressed.

statements obtained by means sufficiently distinguishable from the illegal search are not suppressed. *Id.* *Miranda* warnings do not, in and of themselves, break the causal connection between an illegal search and statements made during the search. *Brown,* 422 U.S. at 603, 95 S.Ct. 2254. Rather, the giving of *Miranda* warnings is but one factor in assessing whether statements are sufficiently distinguishable from an illegal search to be admissible. *Id.* Other factors include the "temporal proximity of the [search] and the [statements], the presence of intervening circumstances, and ... the purpose and flagrancy of the official misconduct." *Id.* at 603–04, 95 S.Ct. 2254 (citation and footnote omitted). The government bears the burden of proving statements are obtained by means sufficiently distinguishable from an illegal search to be admissible. *Id.* at 604, 95 S.Ct. 2254.

■■■ As an initial matter, it is somewhat difficult to assess the admissibility of Thompson's statements because the government failed to put on sufficient evidence regarding the circumstances under which Thompson was questioned. For example, it is unclear whether Thompson was questioned at the beginning of the search, before incriminating evidence was discovered, or near the end of the search, when evidence found during the search could be used to induce her to talk. Nevertheless, in light of the evidence that was presented, the Court concludes Thompson's statements were a product of the illegal search.

In *United States v. Ladum,* 141 F.3d 1328, 1336 (9th Cir.1998), the Ninth Circuit addressed the admissibility of statements made during an illegal search of a business. The search warrant in *Ladum* was declared invalid because it was overbroad. *Id.* at 1337. Nevertheless, the court permitted statements made by the defendant during the search to be admitted at trial.

The court determined the statements were not a product of the illegal search because "the only constitutional principle implicated in the agents' questioning of [the defendant] was their right to be on the premises," and it was undisputed the agents had a right to be on the premises because they had probable cause to search and a search warrant authorized by a magistrate. *Id.* According to the court, when officers have a "legitimate, court-authorized reason for being present at the time of questioning," statements made by a defendant are admissible. *Id.* Unlike the officers in *Ladum,* the officers in the instant case did not have a court-authorized reason for being present at Defendants' residence at the time of questioning. Probable cause may have existed to justify the search, but officers did not have a warrant. Nor were there any circumstances permitting the officers to proceed without a warrant. Thus, under the reasoning of *Ladum,* Thompson's statements were a product of the illegal search. Because the government bears the burden of proving Thompson's statements are admissible and the evidence presented does not demonstrate Thompson's statements were obtained by means sufficiently distinguishable from the illegal search to be "purged of the primary taint," the statements are suppressed. *Brown,* 422 U.S. at 599, 95 S.Ct. 2254.

## IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant Evans' Motion to Suppress Evidence (dkt # 16) and Defendant Thompson's Motion to Suppress Evidence and Statements (dkt # 18) are GRANTED. All evidence seized and statements made by Defendant Thompson during the search will be suppressed at trial.