FILED
United States Court of Appeals
Tenth Circuit

December 22, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RAUL CRUZ,

Defendant-Appellant.

No. 14-2017

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. Nos. 1:12-CV-01097-LH-CG and 1:10-CR-01178-LH-1)

---

Submitted on the briefs:

Todd A. Coberly of Coberly & Attrep, LLLP, Santa Fe, New Mexico, for Defendant-Appellant.

Damon P. Martinez, United States Attorney; Laura Fashing, Assistant United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **BRISCOE,** Chief Judge, **HOLMES** and **BACHARACH**, Circuit Judges.

---

**BRISCOE**, Chief Judge.

---

Defendant Raul Cruz was convicted by a jury of knowingly and intentionally possessing with intent to distribute methamphetamine, in violation of 21 U.S.C. §§

841(a)(1), (b)(1)(B), and 18 U.S.C. § 2, and sentenced to a term of imprisonment of 63 months. Cruz's conviction and sentence were affirmed on direct appeal. United States v. Cruz, 680 F.3d 1261, 1262 (10th Cir. 2012) (Cruz I). Cruz subsequently filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, alleging, in pertinent part, that his trial counsel was ineffective for failing to move to suppress evidence on the grounds that the search warrant when executed on Cruz's residence was neither signed nor dated by the issuing judge. The district court denied Cruz relief on that claim. Cruz now appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the judgment of the district court.[*]

I

*Factual background*

In March 2010, a law enforcement agent employed by the Middle Rio Grande Valley Task Force prepared an affidavit for a search warrant for Cruz's residence in Albuquerque, New Mexico. On the face of the affidavit, the officer swore "upon his oath" that he "ha[d] reason to believe that" Cruz had concealed at his residence a variety of contraband, including "[m]ethamphetamine and other controlled substances of unknown quantity," "[p]araphernalia for weighing, packaging, ingestion, injection, transportation and sales of controlled substances," and "U.S. Currency used in narcotics

---

[*] After examining the brief and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

transactions." ROA, Vol. 2 at 122. In the subsequent pages of the affidavit, the officer

explained the factual basis for his suspicions. This included the officer's statement that

he "was advised by a confidential source" that Cruz was "involved in the distribution of

large quantities of methamphetamine in Albuquerque," and that the confidential source

was present inside Cruz's residence when Cruz was "supplying unidentified individuals

with large quantities of methamphetamine." Id. at 124. The officer also stated that he

had conducted a controlled purchase of methamphetamine from Cruz's residence with the

assistance of the confidential source.

The last page of the affidavit included the concluding paragraphs of the officer's

factual description, followed by a paragraph that stated: "Based on the above facts and

circumstances, Affiant has probable cause to believe the items sought and described

within this affidavit would be found inside [the residence], on the person of . . . Cruz and

in [Cruz's vehicle]." Id. Immediately below this final paragraph was: (1) a date line that

read "THIS ___ DAY of ___, 2010"; (2) separate signature lines for "JUDGE" and

"AFFIANT," along with accompanying lines for the "TITLE" of the judge and the

affiant; and (3) a line that read "APPROVED BY ASSISTANT DISTRICT

ATTORNEY," followed by a blank signature line and a blank date line. Id.

The affidavit was signed and dated by an assistant district attorney on March 26,

2010. On that same day, the officer/affiant presented the affidavit to New Mexico

District Judge Kenneth Martinez. Judge Martinez signed the last page of the affidavit in

the blank signature line entitled "JUDGE," and also handwrote "District Judge" in the

3

accompanying line entitled "TITLE." Id. at 125. The officer/affiant also signed his name in the blank signature line entitled "AFFIANT," and handwrote "Agent 1291" in the accompanying line entitled "TITLE." Id. Either Judge Martinez or the officer completed the blank date line by handwriting "26th" for the day and "March" for the month. Id.

The search warrant form itself listed Cruz's address, stated that "[a] copy of the Affidavit is attached and made a part of this Search Warrant," and incorporated by reference the affidavit's list of property to be seized. Id. The search warrant also included a date and signature line. Judge Martinez did not, however, contemporaneously sign or date the search warrant.

Law enforcement officers executed the search warrant three days later, on March 29, 2010, and found inside of Cruz's residence "baggies with 34.1 grams of methamphetamine (about 90–100 doses), along with horse steroids (a cutting agent), cash, and false identification." Cruz I, 680 F.3d at 1262. "Detectives saw no evidence of drug use in the home or by Mr. Cruz." Id. Cruz admitted "possession of the drug but not intent to distribute it." Id.

Approximately a month later, on April 23, 2010, Judge Martinez signed and dated the search warrant.[1] ROA, Vol. 2 at 119. In doing so, Judge Martinez indicated that the warrant was "DATED THIS 26th DAY OF  March  , 2010 AT 10:00 HOURS." Id. Immediately below this date line, Judge Martinez hand-wrote: "Nunc Pro Tunc on this

_____

[1] The circumstances of how the search warrant was presented to Judge Martinez on this date are not made clear in the record.

4

April 23, 2010." Id.

*Procedural background*

*a) Cruz's trial proceedings and direct appeal*

On April 18, 2010, a criminal complaint was filed against Cruz in federal district court charging him with a single count of manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a controlled substance, in violation of 21 U.S.C. § 841(a). Attorney Christin Kennedy was appointed to represent Cruz. A federal grand jury subsequently indicted Cruz on a single charge of knowingly and intentionally possessing with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 18 U.S.C. § 2.

The case against Cruz proceeded to trial in September 2010, and Cruz was found guilty of the charge alleged in the indictment. In June 2011, the district court sentenced Cruz to a term of imprisonment of 63 months, to be followed by three years' supervised release. The district court noted that Cruz, who was born in Mexico and granted permanent residency in the United States in 1990, was subject to removal during his sentence.

This court affirmed Cruz's conviction and sentence on direct appeal. Cruz I, 680 F.3d at 1262, 1264.

*b) Cruz's § 2255 proceedings*

On October 23, 2012, Cruz filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, alleging two distinct claims of ineffective assistance on the

5

part of Kennedy, his appointed trial counsel. First, Cruz alleged that the search warrant that was issued for his residence in March 2010 was "facially invalid because [Judge Martinez] did not sign or date the warrant," ROA, Vol. 2 at 8, but that Kennedy "did not move to suppress the physical evidence or . . . Cruz's statements obtained as a result of the defective warrant," id. at 9. Second, Cruz alleged that Kennedy failed to adequately advise him concerning "the Government's repeated plea offers," id. at 10, and that, "[b]ecause he had no viable defense to the charge" alleged against him, "he would have entered into a plea agreement with the Government in order to obtain the benefit of" a 3-point reduction pursuant to U.S.S.G. § 3E1.1(b) had he been adequately advised by Kennedy regarding the government's plea offers, id. at 11.

Cruz's claims were first addressed by a magistrate judge. After holding an evidentiary hearing, the magistrate judge concluded there was merit to both of Cruz's ineffective assistance claims and recommended that the district court grant Cruz's § 2255 motion and vacate his conviction. The government filed written objections to the magistrate judge's proposed findings and recommendations.

On October 22, 2013, the district court issued a written order amending in part and adopting in part the magistrate judge's proposed findings and recommended disposition. The district court first addressed the validity of the search warrant and Kennedy's failure to move to suppress on that ground, and rejected the magistrate judge's conclusion that the search warrant was "not properly issued . . . because . . . there was no signature on the warrant by the judge, . . . no date that the warrant was allegedly issued, or any other

6

indication on the face of the warrant that the judge had approved the warrant." Id. at 184. In the district court's view, "Judge Martinez's signature on the search warrant affidavit provided assurance that he found probable cause and officially authorized the search," and "Judge Martinez's nunc pro tunc signature on the warrant [wa]s additional evidence that Judge Martinez made the probable cause determination and issued the warrant on March 26, 2010, at the time he signed the affidavit." Id. at 185.  In short, the district court "conclude[d] that the warrant to search [Cruz's] person and property was issued within the meaning of the Fourth Amendment and was valid." Id. at 189.  The district court also agreed with the government's alternative argument "that the officers who searched [Cruz's] home would have been entitled to the [Leon] good faith exception to the exclusionary rule." Id.  The district court thus concluded that, "had a motion to suppress been filed," the evidence seized from Cruz's residence, as well as his admissions to the police, "would not have been suppressed." Id. at 192.  And it in turn concluded that Kennedy's "failure to file a motion to suppress did not prejudice [Cruz]." Id. at 193.  The district court "therefore sustain[ed] the Government's Objections to the [magistrate judge's] finding that [Cruz] suffered prejudice[] from his counsel's failure to file a motion to suppress," and it stated that it "w[ould] not vacate [Cruz's] conviction." Id. at 194.

As for Kennedy's pretrial advice to Cruz regarding whether or not to plead guilty, the district court agreed with the magistrate judge that Kennedy "failed to look into whether" a prior conviction sustained by Cruz in 1994 "might affect his immigration status," id. at 195, and in turn "did not fully advise [Cruz] . . . that he was eligible for

7

deportation even if acquitted on the 2010 drug charge," id. at 196. The district court also found support for the magistrate judge's finding that Kennedy "did not adequately discuss with [Cruz] that the Government had a very strong case against him." Id. at 197. And, based upon these findings, the district court "agree[d] with the magistrate judge's conclusion that . . . Kennedy's representation was constitutionally ineffective." Id. The district court further determined that "[t]he evidence support[ed] the conclusion that there [wa]s a reasonable probability that, had . . . Kennedy presented [Cruz] with the information that [his] 1994 conviction alone fell under the statute making him eligible for deportation, coupled with information regarding the very strong case of the Government and the possible 2- or 3-level reduction in his sentence for accepting responsibility for the charge in the superseding indictment, [Cruz] would have pled guilty." Id. The district court agreed, however, "with the Government that . . . Kennedy's failure to properly advise [Cruz] about a plea agreement d[id] not support vacating his conviction." Id. at 198. "The proper remedy for this constitutional violation," the district court concluded, "[wa]s to set aside his sentence." Id. at 198-99.

Thus, in sum, the district court granted Cruz's § 2255 motion "as to the request to set aside the sentence" and ordered that Cruz "w[ould] be [granted] a new sentencing hearing," but denied the § 2255 motion "as to the request to vacate [Cruz's] conviction." Id. at 200. On the same date that the district court issued its order granting in part and denying in part Cruz's § 2255 motion (October 22, 2013), it purported to enter final judgment.

8

On January 2, 2014, the district court resentenced Cruz to a term of imprisonment of 46 months, to be followed by a three-year term of supervised release, and it again noted that Cruz was subject to removal during his sentence.

On January 4, 2014, Cruz filed a motion for certificate of appealability seeking to challenge the district court's partial denial of his § 2255 motion. The district court granted that motion on February 4, 2014. Cruz filed a notice of appeal the following day.

II

At our request, the parties filed supplemental briefs addressing whether Cruz's notice of appeal, which was filed more than three months after the district court's purported entry of final judgment, was timely. The parties agree, as do we, that Cruz filed a timely notice of appeal and that, as a result, we have jurisdiction over this appeal.

As the parties correctly note in their supplemental briefs, a § 2255 motion is a "hybrid type[] of case[]." Sloan v. Pugh, 351 F.3d 1319, 1323 (10th Cir. 2003) (internal quotation marks omitted); see also United States v. Jones, 215 F.3d 467, 468 (4th Cir. 2000) (noting "that habeas actions are a unique hybrid of civil and criminal"). Although it relates to the original criminal proceeding, it is generally treated as an independent civil suit.[2] Andrews v. United States, 373 U.S. 334, 338 (1963) ("An action under 28 U.S.C. § 2255 is a separate proceeding, independent of the original criminal case."); Martin v.

___

[2] That is reflected by the district court activity in this case. When Cruz filed his § 2255 motion, the district court clerk's office responded by: (1) docketing the motion in Cruz's criminal case; and (2) opening a new civil proceeding (i.e., the § 2255 proceeding). The district court clerk's office thereafter continued to simultaneously docket pleadings in both proceedings.

United States, 273 F.2d 775, 777 (10th Cir. 1960) (same).

The hybrid nature of a § 2255 proceeding impacts when an appeal may be taken in such a proceeding. In Andrews, the Supreme Court held that a district court order granting a § 2255 motion and ordering that the defendant be resentenced is not a final appealable order. 373 U.S. at 339-340. More specifically, the Court held that until the defendant in such a case is actually resentenced, the § 2255 proceedings are not complete. As a result, the Court held, "no appeal c[an] be taken from a district court's order contemplating, but not accomplishing, the [defendant's] resentencing." United States v. Hadden, 475 F.3d 652, 662 (4th Cir. 2007) (analyzing Andrews); see Andrews, 373 U.S. at 340 (noting that "until the courts acts [to resentence the defendant], none of the parties to th[e] controversy will have had a final adjudication of his claims by the trial court in the[] § 2255 proceeding[].").

Applying Andrews to the case at hand, it is clear that the "final judgment" that was purportedly entered by the district court on October 22, 2013, was not, in fact, a final, appealable order because Cruz had not yet been resentenced. Under Andrews, Cruz's § 2255 proceeding (i.e., the civil case that was precipitated by the filing of Cruz's § 2255 motion) did not become "final," and therefore appealable, until at least January 2, 2014, when the district court resentenced Cruz. As a result, the notice of appeal filed by Cruz in the § 2255 proceeding on February 5, 2014, was timely. See Fed. R. App. P. 4(a)(1)(B) (providing that, in a civil case in which the United States is a party, "[t]he notice of appeal may be filed by any party within 60 days after entry of the judgment or order

10

appealed from . . . ."); see also Hadden, 475 F.3d at 664 ("To the extent the [resentencing] order formally completes the prisoner's § 2255 proceeding, it is part of that proceeding, and, accordingly, a prisoner's appeal of that aspect of the order is an appeal of a § 2255 proceeding.").

## III

We now turn to the merits of Cruz's appellate arguments. According to Cruz, the district court erred in rejecting his claim that Kennedy was ineffective for failing to move to suppress the evidence obtained during and following the execution of the search warrant at Cruz's residence. Cruz in turn argues that the district court should have, on the basis of that claim, granted his § 2255 motion in full and vacated his conviction.

Because this appeal arises from "the denial of a § 2255 motion for post-conviction relief, we review the district court's findings of fact for clear error and its conclusions of law de novo." United States v. Rushin, 642 F.3d 1299, 1302 (10th Cir. 2011).

### The Strickland standards

To prevail on his claim that Kennedy was ineffective for failing to move to suppress evidence, Cruz must satisfy the two-part burden outlined by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Specifically, Cruz must establish that (1) Kennedy's "performance was deficient," and (2) that "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. "[T]he ultimate focus of [this] inquiry [is] on the fundamental fairness of the proceeding whose result is being challenged." Id. at 696.

11

*Was Cruz prejudiced by Kennedy's failure to file a motion to suppress?*

We begin and end our analysis with <u>Strickland</u>'s prejudice prong.  <u>See</u> <u>id.</u> at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").  To satisfy the prejudice prong, Cruz "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Id.</u>

According to Cruz, Kennedy should have moved to suppress the evidence seized during the search of Cruz's residence, as well as his subsequent statements to police regarding the fruits of the search, on the grounds that the search warrant was invalid because it was not signed or dated, and thus had not been "issued" by a judge, at the time of its execution.  ROA, Vol. 2 at 90.  Cruz in turn asserts, with respect to <u>Strickland</u>'s prejudice prong, that such a motion would have been meritorious, would have resulted in the suppression of the evidence seized from his residence and his statements to police, and ultimately would have led to either the dismissal of charges against him or his acquittal at trial.

The text of the Fourth Amendment expressly prohibits "unreasonable searches and seizures," U.S. Const. amend. IV, and "[i]t is a basic principle of Fourth Amendment law . . . that searches and seizures inside a home without a warrant are presumptively unreasonable."  <u>Kentucky v. King</u>, 131 S. Ct. 1849, 1856 (2011) (internal quotation

12

marks omitted).  The text of the Fourth Amendment also states, in pertinent part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  Thus, "a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." King, 131 S.Ct. at 1856.

The First Circuit recently concluded, and we agree, that "nothing in the [text of] the Fourth Amendment [expressly] conditions the validity of a warrant on its being signed." United States v. Lyons, 740 F.3d 702, 724 (1st Cir.), cert. denied, 134 S. Ct. 2743 (2014).  Instead, the text of the Fourth Amendment refers only to "probable cause"[3] and a particular description of "the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  Further, "while Federal Rule of Criminal Procedure 4(b)(1)(D) explicitly states that arrest warrants must be signed . . . , neither federal nor state rules of criminal procedure governing search warrants contain such a requirement." Lyons, 740 F.3d at 724-25.  Thus, such a requirement could exist only if we were willing "to find implicit in the Fourth Amendment a constitutional mandate that the magistrate who had made a probable cause determination also sign the warrant." Id. at 725.

In Lyons, which involved strikingly similar facts, the First Circuit dealt with this precise question.  The police in Lyons "completed a written application to search [the

---

[3] The probable cause requirement is established "by an oath or affirmation and a neutral or detached magistrate mak[ing] a probable cause determination." Lyons, 740 F.3d at 725.

defendant's home] and swore in support of that application." Id. at 724. "The application recited facts establishing probable cause." Id. "The state judge reviewed the application, determined that probable cause existed, signed the application, and signed the accompanying affidavit." Id. Although "[t]he warrant described particularly the place to be searched, and the persons or things to be seized," "[t]he judge . . . unintentionally forgot to sign the warrant itself before the officers conducted the search." Id. The day "after the search was complete[d], state law enforcement officials noticed the omission." Id. "The prosecutor promptly returned that day to the same judge, who belatedly signed the warrant, at the same time writing a note explaining that his failure to sign previously 'was inadvertent and of no substantive consequence.'" Id.

The defendant in Lyons argued, in pertinent part, "that the warrant was invalid precisely because it was not signed until after the search." Id. The First Circuit rejected that argument, concluding, in pertinent part, that there was "no convincing reason to find implicit in the Fourth Amendment a constitutional mandate that the magistrate who has made a probable cause determination also sign the warrant." Id. at 725. The First Circuit noted that its "conclusion [wa]s strengthened by the consistent rejection of formalistic approaches to signatures in warrants by federal appellate courts in other contexts."[4] Id. Such cases, the First Circuit concluded, "show a consistent unwillingness to find a

_____

[4] For example, the Second Circuit has held that the Fourth Amendment, though requiring "the determination of probable cause . . . [to] be made by a neutral and detached magistrate," does not "prevent[] [a] magistrate from delegating th[e] purely ministerial task [of signing the warrant] to [a law enforcement agent]." United States v. Turner, 558 F.2d 46, 50 (2d Cir. 1977).

14

constitutional violation when the express mandates of both constitution and rule have been satisfied." Id. at 726. Thus, "[g]iven the clear and contemporaneous evidence that the state justice made a proper probable cause determination and approved the issuance of a warrant for execution," the First Circuit "decline[d] to find in the lack of a signature a reason for suppression." Id.

We agree with and adopt the First Circuit's reasoning in Lyons, subject to the following "note of caution":

> The presence of a signature provides easy and reliable proof that a warrant was in fact issued. An officer who observes that a warrant is unsigned might not be assured that it was actually issued, and might execute it at his peril if he has no other good reason to believe the warrant was issued. And when, as here, the warrant is not signed, proof of issuance becomes more involved and less certain. In many circumstances, the magistrate or judge may not recall reviewing or issuing the warrant by the time his belated signature is sought. For these reasons, we are confident that police will continue to have ample incentive to secure signatures. In any event, we find no sufficient reason to read a signature requirement into the Fourth Amendment, and we leave to any future revisers of Federal Rule of Criminal Procedure 41(e) whether to adopt such a presently-omitted requirement for search warrants.

Id. at 726-27.

Cruz argues, however, that Lyons "ha[s] no import because [it did not] address[] the issue of whether the warrant was facially valid in light of Groh[ v. Ramirez, 540 U.S. 551 (2004)]." Aplt. Br. at 18 n.8. According to Cruz, Groh held that "[b]efore a search warrant may issue under the Fourth Amendment, it must: (1) include a finding of probable cause; (2) be supported by oath or affirmation; (3) particularly describe what is to be searched; and (4) particularly describe what is to be seized." Aplt. Br. at 10. Cruz

15

in turn argues that "[a]lthough the purported warrant in this case may have met the second, third, and fourth requirements, it was facially deficient at the time of the search because it lacked any indication that a neutral and detached magistrate had made a determination of probable cause." Id. at 11.

Cruz's arguments are only partially correct. To be sure, Groh recognized that the text of the Fourth Amendment imposes four requirements on every warrant: (1) the warrant must be "based on probable cause"; (2) the warrant must be "supported by Oath or affirmation"; (3) the warrant must describe particularly the place to be searched; and (4) the warrant must describe particularly the persons or things to be seized. 540 U.S. at 557. But Cruz erroneously interprets this first requirement as requiring the face of the warrant itself to "contain[] . . . markings," preferably a signature, "indicating that a neutral and detached magistrate . . . actually" made a finding of probable cause. Aplt. Br. at 11. Nothing in Groh, however, let alone the text of the Fourth Amendment itself, imposes such a facial requirement. Rather, the Fourth Amendment, as Groh recognized, imposes a substantive requirement that every warrant issue only "upon probable cause." See Lyons, 740 F.3d at 725 (concluding that the Fourth Amendment's probable cause requirement is established "by an oath or affirmation and a neutral or detached magistrate mak[ing] a probable cause determination"). Indeed, in concluding that the warrant at issue in Groh satisfied this requirement, the Supreme Court stated simply that the warrant "was based on probable cause"; it did not discuss what the warrant itself said in regards to

16

the probable cause finding.[5]  540 U.S. at 557.  Moreover, <u>Groh</u> thereafter dealt

exclusively with the fourth requirement, i.e., that the warrant particularly describe the

persons or things to be seized, and this requirement, by its express terms, does involve the

face of the warrant.[6]  Thus, in sum, <u>Groh</u> does not stand for the proposition that a warrant

must include, on its face, the issuing judge's signature or any other specific marking from

the issuing judge.

Cruz makes no other attempt to directly challenge <u>Lyons</u>.  Instead, consistent with

his argument that a warrant must include on its face the issuing judge's signature, he

suggests that we should adopt the reasoning outlined in <u>United States v. Evans</u>, 469 F.

Supp. 2d 893 (D. Mont. 2007).  In <u>Evans</u>, a law enforcement agent appeared before a

federal magistrate judge seeking a search warrant for a residence belonging to the

defendants.  The agent presented the magistrate judge "with an affidavit summarizing the

investigation of Defendants for possession, receipt, and distribution of child

pornography."  469 F. Supp. 2d at 895.  The magistrate judge placed the agent "under

oath and had him sign the search warrant application and affidavit."  <u>Id.</u>  The magistrate

---

[5] In this case, Cruz does not seriously dispute that probable cause, based upon the facts outlined in the affidavit, existed for the issuance of the search warrant for his residence.

[6] At issue in <u>Groh</u> was the validity of a search warrant that, "[i]n the portion of the form that called for a description of the 'person or property' to be seized," erroneously listed "a description of [the] two-story blue house" that was to be searched, "rather than the" contraband that was sought by law enforcement, i.e., an "alleged stockpile of firearms."  540 U.S. at 554.  The search warrant in <u>Groh</u> also failed to "incorporate by reference the itemized list [of contraband] contained in the application."  <u>Id.</u> at 554-55.

17

judge "then read and signed the application and affidavit himself in two separate places." Id. The magistrate judge did not, however, "sign the search warrant itself or indicate on the warrant the date before which it had to be executed." Id. The magistrate judge later "testified his failure to sign the warrant was an oversight." Id. "He also indicated it was his usual practice to sign a search warrant application and affidavit only when he also intended to issue a warrant." Id.

During the subsequent search of defendants' residence, "officers seized various computer equipment later found to contain images of child pornography." Id. Defendants also waived their Miranda rights and "admitted to using their computers to view child pornography." Id. After the search was completed, the law enforcement agent who signed the affidavit and obtained the search warrant "went to his vehicle to obtain a copy of the search warrant to leave with Defendants" and "[o]nly then . . . notice[d] [that] the search warrant was unsigned." Id. at 895-96. The agent "called the U.S. Attorney's office and was advised to do nothing about the deficiency on the theory that the harm was done." Id. at 901. The agent then "left a copy of the search application and affidavit" with defendants. Id. at 896.

After being indicted for distribution, receipt, and possession of child pornography, defendants moved to suppress the evidence seized during the search. One of the defendants also moved to suppress the statements she made to officers during the search. The district court granted defendants' motions, holding that "[a]n unsigned warrant . . . is not a warrant within the meaning of the Fourth Amendment," and that "officers cannot

18

reasonably rely on such a glaring deficiency as authorization to search." Id. at 895.

In arriving at this conclusion, the court in Evans purported to rely on Groh. The court explained that, like "the particularly [sic] requirement in Groh, the text of the Fourth Amendment demands that a warrant be 'issue[d].'" Id. at 897 (quoting U.S. Const., amend. IV) (brackets in original). "Issuance," the court explained, "serves to demonstrate that a neutral and detached magistrate has reviewed the warrant application and affidavit and made an independent and objective determination that probable cause exists to justify the search." Id. Although "[t]he Fourth Amendment's issuance requirement may not necessitate a magistrate's signature on the warrant," the court stated, "[i]t does . . . demand that the warrant contain some indication that the search is officially authorized." Id. (citing Black's Law Dictionary 850 (8th ed. 2004) (defining "issue" as "[t]o be put forth officially"). Because the search warrant at issue "was not signed by the magistrate," "did not indicate the date before which the search had to be conducted," and "did not contain a case number or stamp indicating it had been filed with the Clerk of Court," the court concluded that it "lacked any indication that it was officially authorized." Id.

The court in Evans rejected the government's suggestion that "the warrant [at issue] was officially authorized because [the magistrate judge] signed the search warrant application and affidavit." Id. In support, the court stated that "[a] magistrate's signature on the search warrant application and affidavit . . . merely indicates the document was signed and sworn to by the requesting officer in the magistrate's presence," id. at 898, whereas "[a] magistrate's signature on a search warrant indicates the search warrant

19

application and affidavit presented to him contain probable cause to justify the search requested," id. at 897-98. In the court's view, "if a magistrate's signature on a search warrant application and affidavit was sufficient to satisfy the Fourth Amendment, the language of that Amendment, which requires issuance of a 'warrant,' would become meaningless." Id. at 898. In sum, the district court concluded that, "[b]ecause [the magistrate judge's] signature on the search warrant application and affidavit provide[d] no assurance he found probable cause and officially authorized the search, it d[id] not satisfy the Fourth Amendment's issuance requirement." Id. (citing Groh, 540 U.S. at 557-561).

The court in Evans also rejected the government's argument that the search warrant should be deemed valid "because [the magistrate judge] intended to issue the warrant." Id. at 898. The court stated that it was "unwilling to accept the potential repercussions of adopting the forgiving interpretation of the Fourth Amendment urged by the government." Id. at 899. "Absent an exception," the court stated, "the Fourth Amendment requires a probable cause determination to be made and issued by a magistrate before officers invade a person's privacy." Id. The court thus concluded that, "[b]ecause the warrant [at issue] did not provide any indication that it was officially authorized, the search of Defendants' residence was warrantless in violation of the Fourth Amendment." Id.

Finally, the court in Evans rejected the government's reliance on the good faith exception to the exclusionary rule outlined in United States v. Leon, 468 U.S. 897, 922

20

(1984). The court explained that "[t]he Leon good faith exception may possibly excuse a deficiency in the language of a warrant, but it does not apply to excuse the absence of a warrant." 469 F. Supp. 2d at 900. And, the court stated, "[e]ven if the search of Defendants' residence was not warrantless, the Leon good faith exception d[id] not apply" because "[a]n unsigned warrant is so patently defective that it is objectively unreasonable for officers to rely on it." Id. "[A]s in Groh," the court stated, "a cursory glance at the warrant would have revealed the absence of the magistrate's signature," and, "[u]nder the circumstances, [the ICE agent] could have attempted to contact [the magistrate judge] to obtain a properly issued warrant." Id. at 901. In sum, the court held that "[b]ecause the unsigned warrant was patently deficient, the officers' reliance on it to justify the search of Defendants' residence was not objectively reasonable." Id.

We conclude that the Evans court's interpretation of the Fourth Amendment is erroneous and thus decline to adopt it. To be sure the text of the Fourth Amendment states, in pertinent part, that "no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV (emphasis added). But, contrary to the conclusion reached by the Evans court, the term "issue," as used in the Fourth Amendment, does not impose a specific "issuance" requirement, i.e., as the Evans court described it, some type of "indication [on the face of the warrant] that [the warrant] was officially authorized." 469 F. Supp. 2d at 897. Instead, we conclude that the language of the Fourth Amendment was intended to outline what requirements must be satisfied

21

before a warrant "shall issue." In other words, we conclude that the term "issue" does not itself impose any requirements that must be satisfied by a warrant; instead, the specific requirements that must be imposed for a warrant to "issue" are outlined in the language of the Fourth Amendment that immediately follows the term "issue." Cf. United States v. Turner, 558 F.2d 46, 50 (2d Cir. 1977) ("As long as the magistrate in fact performs the substantive tasks of determining probable cause and authorizing the issuance of the warrant, the amendment is satisfied.").

Indeed, the Supreme Court's decision in Groh supports our conclusion that the term "issue," as employed in the Fourth Amendment, does not itself impose any specific requirements on a warrant. As previously discussed, the Court in Groh quoted the relevant language of the Fourth Amendment and immediately proceeded to indicate that this language imposes four requirements: (1) the warrant must be based "upon probable cause"; (2) the warrant must be "supported by Oath or affirmation," e.g., an affidavit; (3) the warrant must "particularly describ[e] the place to be searched"; and (4) the warrant must "particularly describ[e] the . . . things to be seized." 540 U.S. at 557. Noticeably absent from this list is the requirement of a "magistrate's signature, or other indication of authorization, on the face of the warrant." Evans, 469 F. Supp. 2d at 897. To be sure, the warrant at issue in Groh was signed by the issuing magistrate judge and thus its authorization was not at issue. Id. at 554 ("The Magistrate signed the warrant form."). But, had this detail carried constitutional significance, the Court surely would have said so, particularly since it made a point to emphasize the "requirements" that were imposed

22

by the language of the Fourth Amendment and to specify which of those requirements were satisfied or not satisfied by the warrant in question. Id. at 557 ("The warrant in this case complied with the first three of these [four] requirements"). Thus, Groh, rather than supporting the decision in Evans, undercuts it.

In addition, an examination of the ordinary meaning of the term "issue" calls into question, and thus makes us hesitant to rely on, the decision in Evans. The term "issue" is commonly defined as "[t]he action of going, passing, or flowing out," Oxford English Dictionary Online, http://www.oed.com/view/Entry/100216?rskey=Za1fbR&result=1#eid (last visited on Dec. 4, 2014), or "[t]o 'come out' or be sent forth officially or publicly," id., http://www.oed.com/view/Entry/100217?rskey=Za1fbR&result=2#eid (last visited on Dec. 4, 2014). This common and simple definition fits perfectly within the framework of the complete text of the Fourth Amendment. In other words, if we were to replace the term "issue" with this definition, the text of the Fourth Amendment would read: "no Warrants shall [go out or be sent forth officially], but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[7] U.S. Const. amend. IV. This definition, in our view, is consistent with Groh's interpretation of the Fourth Amendment which, as we have discussed, does not read into the term "issue" any specific technical requirements.

Finally, even assuming, for purposes of argument, that there was merit to the

_____

[7] And, so interpreted, it is undisputed that Judge Martinez intended to authorize the search of Cruz's residence and officially "sent forth" the search warrant to be executed.

23

position outlined in <u>Evans</u> and that the search warrant in this case failed to satisfy the requirements of the Fourth Amendment, that would still leave the question of whether the <u>Leon</u> good faith exception would apply and effectively prevent the suppression of the seized evidence. In <u>Leon</u>, the Supreme Court noted that the Fourth Amendment's "exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." 468 U.S. at 916. Consequently, the Court "conclude[d] that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." <u>Id.</u> at 918. Notably, the Court stated that "a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." <u>Id.</u> at 922 (internal quotation marks omitted). But the Court did concede that the executing "officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." <u>Id.</u> Thus, the Court stated, "[s]uppression . . . remains an appropriate remedy" in at least four circumstances: (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "in cases where the issuing magistrate wholly abandoned his judicial role"; (3) in cases in which the "warrant [was] based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) in circumstances where the "warrant [is] so facially deficient—i.e., in failing to particularize the place to be

24

searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." Id. (internal quotation marks omitted).

The presence of the warrant alone in this case carries significant weight in terms of establishing the executing officers' good faith. Further, there is no evidence that Judge Martinez was misled, that he wholly abandoned his judicial role, that the affidavit in support of the warrant was wholly lacking in indicia of probable cause, or that the warrant failed to particularize the place to be searched or the things to be seized. Indeed, the only potentially unusual aspect of the warrant was the absence of Judge Martinez's signature on the face of the warrant. And, because Judge Martinez actually signed the affidavit for the warrant and effectively indicated that he found the existence of probable cause and intended for the warrant to issue, it was objectively reasonable for the agent who obtained the warrant, as well as the other officers who assisted in executing the warrant, to believe that the warrant was valid. See United States v. Kelley, 140 F.3d 596, 603 (5th Cir. 1998) (holding, in case involving unsigned warrant, that Leon good-faith exception applied). Indeed, as the Supreme Court stated in Massachusetts v. Sheppard, 468 U.S. 981, 989-90 (1984), "we refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested." As a result, the Leon good faith exception applies and would operate to prevent the suppression of the seized evidence.

For all of these reasons, we conclude that Cruz cannot "show that there is a reasonable probability that . . . the result of [his criminal] proceeding would have been

25

different" had Kennedy filed a motion to suppress. 466 U.S. at 694.

IV

We conclude that the district court properly denied Cruz's § 2255 motion to the extent it claimed that Cruz's trial counsel was ineffective for failing to file a motion to suppress evidence. Consequently, we AFFIRM the judgment of the district court.

26