**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 19-4804**

_____

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

WILLIE M. HARDY, JR.,

        Defendant - Appellant.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News.  Arenda L. Wright Allen, District Judge.  (4:18-cr-00077-AMA-DEM-1)

_____

Submitted:  January 29, 2021                    Decided:  June 9, 2021

_____

Before WILKINSON, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

_____

Affirmed by published opinion.  Judge Richardson wrote the opinion, in which Judge Wilkinson and Judge Quattlebaum joined.

_____

Alan H. Yamamoto, Alexandria, Virginia, for Appellant.  G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Megan M. Cowles, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee.

_____

RICHARDSON, Circuit Judge:

Willie Hardy confessed to drug and firearm offenses after waiving his *Miranda* rights. Based on his confession and other evidence, he was indicted. Hardy did not seek to suppress his confession and did not object when video clips of it were played during the trial. And the jury convicted him. Now, for the first time, Hardy challenges the district court's failure to specifically instruct the jury that it should "give such weight to the confession as the jury feels it deserves under all the circumstances" as required by statute. 18 U.S.C. § 3501(a). Hardy also argues that there was insufficient evidence that he possessed a firearm for two of the counts. Finding no prejudice from the failure to instruct, in part because there was overwhelming evidence for each charge, we affirm Hardy's conviction and sentence.

## I.    Background

### A.    Search, interviews, and Hardy's jail calls

After obtaining a search warrant, Newport News officers searched a residence located on Marshall Avenue. The two-story apartment had a living room and kitchen downstairs and two bedrooms, a bathroom, and a closet upstairs. When the officers arrived, Hardy was in the apartment with eight others.

Hardy was advised of his *Miranda* rights and agreed to speak. In a video-recorded interview, Hardy admitted to selling marijuana: He was a "two ounce" man, meaning he bought two ounces of marijuana at a time, broke it down into "dimes" or $10 bags, and

sold it.  GX 11-3.[1]  At first, he denied dealing in heroin but later admitted to trying to serve as a middleman for heroin five weeks earlier.  GX 11-4, 11-5.  He also told the detectives that they would find a black bag with seven to eight ounces of marijuana in the residence.

As Hardy predicted, the search turned up a black bag with 7.5 ounces of marijuana in an open, vacuum-sealed bag in the living room.  And other incriminating evidence was found in the bag, including a digital scale, plastic baggies, and almost five grams of heroin.  A magazine with two .35 caliber cartridges was found near the bag.  A sawed-off but defective Remington .35 caliber rifle was across the room in the living-room closet inside a gray sweatshirt.  In the kitchen, officers found Hardy's phone beside the kitchen sink.  Under the sink, the officers found a .40 caliber Glock with a loaded magazine.  And above the refrigerator, on the other side of the kitchen, was a folder with Hardy's social security card, conditional employment offer, DMV notification, and mail.  Upstairs, other items were recovered, including drug paraphernalia, other guns, ammunition, and documents reflecting who lived there.

The interview continued after Hardy was taken to the police station.  While there, he admitted that about a week earlier someone named Chico gave Hardy the Remington rifle after Hardy's son had been robbed.  Hardy also explained that eight months earlier someone named "Q" left the Glock in his son's car that Hardy had been driving.  J.A. 543–44; GX 12-1.  Hardy explained that he had kept the gun, believed it was a .40 caliber, and

---

[1] "GX" refers to the government's trial exhibits, which were helpfully submitted with the joint appendix.  Though parties often fail to provide the relevant trial exhibits, the joint appendix here included the necessary documentary exhibits along with a CD with the audio and video exhibits.

had never carried or shot it.  Hardy also unlocked his phone for the officers to search.  But when given a consent form to formalize his consent to search the phone, he indicated that any consent given at that moment would have been procured "under duress."  J.A. 434–35.

While in custody, the jail recorded several of his phone calls.  During one, Hardy told his son that "Little Kenny" should take the gun charge as he was "not a convicted felon."  GX 18-1.  Hardy instructed his son to make sure Little Kenny wrote an affidavit explaining that the "junk was his though[,] [c]ause he ain't no convicted felon."  GX 19-1.  When Hardy's son proposed claiming the "junk" was his, Hardy agreed that he "could if [he] want[ed] to," before concluding that the plan would not work since his son had not been at the residence.  GX 20-1.

B.  **Proceedings below**

Hardy was charged with five counts:  (1) possession with intent to distribute heroin, 21 U.S.C. § 841; (2) possession with intent to distribute marijuana, 21 U.S.C. § 841; (3) possession of a firearm in furtherance of a drug-trafficking crime, 18 U.S.C. §§ 924(c); (4) possession of a firearm by a felon, 18 U.S.C. § 922(g)(1); and (5) possession of an unregistered short-barrel rifle, 26 U.S.C. §§ 5861(d), 5845(a)(4).

The jury found the defendant guilty of Counts 2, 3, and 4 and not guilty of Counts 1 and 5.  As reflected on the verdict form, the guilty verdict on Count 3 rested on Hardy's possession of the Glock, not the Remington.  Hardy was sentenced to 300 months imprisonment.  He timely appealed, and we have jurisdiction.  28 U.S.C. § 1291.

4

## II.     Discussion

Hardy claims that the district court plainly erred in failing to provide the instruction required by 18 U.S.C. § 3501(a).  Section 3501(a) commands that the district court "shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances" when it admits a confession into evidence.[2]  Neither party requested this instruction, and the district court did not give it.

We review the failure to give the § 3501(a) instruction only for plain error because Hardy did not raise this claim in the district court.  *United States v. McMiller*, 954 F.3d 670, 674 (4th Cir. 2020).  A right "may be forfeited in criminal . . . cases by the failure to make timely assertion of the right" before the district court.  *Yakus v. United States*, 321 U.S. 414, 444 (1944).  When a defendant fails to raise an argument in the district court, we may "correct only 'particularly egregious errors,'" *United States v. Young*, 470 U.S. 1, 15 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163 (1982)), and only "[i]n exceptional circumstances," *United States v. Atkinson*, 297 U.S. 157, 160 (1936).

---

[2] Section 3501 was passed to overrule *Miranda*, and § 3501(a) was designed to ensure that any admitted confession would be voluntary and that an instruction be given to ensure that the jury considered factors like voluntariness.  *Dickerson v. United States*, 530 U.S. 428, 436 (2000); *see also United States v. Guanespen-Portillo*, 514 F.3d 393, 400 (5th Cir. 2008).  The Supreme Court found the attempt to overrule *Miranda* unconstitutional. *Dickerson*, 530 U.S. at 444.  It is unclear whether aspects of § 3501(a) survived *Dickerson*. *See Guanespen-Portillo*, 514 F.3d at 400–01, 405; *United States v. Colon*, 744 F.3d 752, 758 (1st Cir. 2014) ("When the Supreme Court in *Dickerson* knocked down the body of that effort, the instruction remained, like Ozymandias's pedestal, serving little continuing purpose beyond reminding one of the impermanence of that which it once supported."). *But see Joseph v. United States*, 549 U.S. 1175 (2007) (statement of Stevens, J., respecting the denial of the petition for writ of certiorari) (stating that only the part of the statute overruling *Miranda* was enjoined).  We have not and need not decide the section's continued validity here as this question was not raised.

To identify the particularly egregious errors and exceptional circumstances that warrant correcting forfeited errors, "a defendant must show that: (1) an error occurred; (2) the error was plain; and (3) the error affected his substantial rights." *United States v. Lockhart*, 947 F.3d 187, 191 (4th Cir. 2020) (en banc) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)). If those three criteria are satisfied, we may exercise our discretion to correct the error "only if [it] seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *United States v. Massenburg*, 564 F.3d 337, 343 (4th Cir. 2009)); *see* Fed. R. Crim. P. 52(b).

The parties disagree about whether failing to give the exact instruction required by § 3501(a) constitutes an error that is plain in all circumstances. Hardy argues that *United States v. Sauls*, 520 F.2d 568 (4th Cir. 1975), dictates that the error is plain for steps one and two of the plain-error analysis. In *Sauls*, we explained that "'whether requested or not,' the trial court should instruct the jury specifically 'upon the law governing the use of a confession' and a failure to do so is clear error," even when general credibility and weight-of-the-evidence instructions are given. *Id.* at 569–70 (quoting *United States v. Inman*, 352 F.2d 954, 956 (4th Cir. 1965)). We went on, however, to find that error non-prejudicial. *Id.* The government argues that *Sauls*'s holding—that the failure to give the § 3501(a) instruction is clear error—has been eroded by subsequent Supreme Court precedent. But we need not decide that here, as even if the district court committed an error that was plain, that error did not affect Hardy's substantial rights. *See United States v. Strickland*, 245 F.3d 368, 379 (4th Cir. 2001).

A plain error normally affects a defendant's substantial rights if the error was prejudicial, meaning that it "affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734. Determining whether an error was prejudicial requires "a specific analysis of the district court record—a so-called 'harmless error' inquiry," *id.*—with the burden of persuasion placed on the defendant to "'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different," *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76, 82 (2004)). Hardy fails to make that showing.

Despite the district court's failure to give the § 3501(a) instruction, any prejudice Hardy suffered is minimized: (1) by the instructions the district court did give, and (2) because Hardy did not meaningfully challenge the voluntariness or veracity of his confession. First, the district court gave general weight-of-the-evidence and witness-credibility instructions. The district court instructed the jury that they should "use [their] good sense in considering and evaluating the evidence," "weigh all of the evidence," and act as the "sole judges of the evidence received in this case" and "of the credibility of each of the witnesses and the weight their testimony deserves." J.A. 825, 828, 830, 832. These instructions informed the jury of their responsibility to weigh all the evidence, including Hardy's statements. *See United States v. Colon*, 744 F.3d 752, 758–59 (1st Cir. 2014) (finding no error where similar general instructions were given). Thus, those instructions limited any prejudice Hardy suffered from the lack of a § 3501(a) instruction. *See United States v. Guanespen-Portillo*, 514 F.3d 393, 405 (5th Cir. 2008) (standard credibility-of-

7

witnesses instruction minimizes prejudice).[3]  So we can assume that the jury, to some extent, gave whatever weight to Hardy's statements they felt was appropriate.

Second, even given a § 3501(a) instruction, there would be little reason for the jury to disbelieve Hardy's confession because Hardy made no meaningful challenge at trial to his confession's voluntariness or veracity.  *See United States v. Santos*, 131 F.3d 16, 19 (1st Cir. 1997) (explaining that where voluntariness was not meaningfully raised, the prejudice arising from failing to give a § 3501(a) instruction is minimal); *United States v. Iwegbu*, 6 F.3d 272, 276 (5th Cir. 1993) (same); *cf. United States v. March*, 999 F.2d 456, 462 (10th Cir. 1993) (finding that if voluntariness was not raised before the district court, it was not an error to omit a § 3501(a) instruction).  The only evidence Hardy seemed to put forth about voluntariness was that when the officers tried to get Hardy to consent to a search of his phone, he said he would "only sign [the consent form] under duress," at which time law enforcement chose not to pursue that investigative technique.  J.A. 434–35.  And in closing arguments, defense counsel at best suggested that the confession was somehow entitled to less weight because Hardy was emotional and the officers told him some of the conversation would be off the record and that Hardy could help himself by talking.  But the techniques the police used here do not cast doubt on the voluntariness of Hardy's confessions or their veracity.  *Cf. United States v. Braxton*, 112 F.3d 777, 780–81 (4th Cir.

---

[3] Hardy argues his failure to testify means that the general instruction on the weight to give to witness testimony would not cause the jury to evaluate his own credibility.  We do not find that argument persuasive.  The instructions here minimized prejudice because they repeatedly instructed the jury to weigh all the evidence, which includes both in-court and out-of-court statements.

8

1997) (to determine whether a statement is voluntary, we ask if the "defendant's will has been overborne or his capacity for self-determination critically impaired" (quotation marks omitted) (quoting *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987))). Thus, a § 3501(a) instruction would likely have done little to convince a jury that they should discount Hardy's confessions. *Cf. Sauls*, 520 F.2d at 570 (suggesting where there was little attempt to "dispute any of the testimony offered," the failure of the trial court to give a § 3501(a) instruction "could not be regarded as prejudicial").

All told, the above convinces us that any potential prejudice Hardy suffered from the lack of a specific § 3501(a) instruction was minimal. In situations such as these, only where the case was close and the government relied heavily on confession evidence would we find that such an omission affected the defendant's substantial rights.

But here, the evidence was not close. Overwhelming evidence established Hardy's guilt, including Hardy's confessions and the physical evidence to corroborate them. *Id.* ("overwhelming" evidence means there cannot be prejudice); *United States v. Hoac*, 990 F.2d 1099, 1109–10 (9th Cir. 1993) (consistency between the physical evidence and a defendant's confession minimizes any prejudice from omitting a § 3501(a) instruction).

We start by reviewing the evidence supporting Count 2 for possessing marijuana with intent to distribute. Hardy does not challenge the jury's verdict on this count and rightfully so. Extensive evidence tied Hardy to the marijuana. Hardy, before being transported to the police station, said that he had seven to eight ounces of marijuana in a black bag in the apartment. And the black bag found in the living room revealed, among

9

other things, the marijuana and hair clippers. J.A. 952. Hardy explained that he worked as a barber, so the hair clippers help tie the bag and marijuana to Hardy.

The evidence not only tied Hardy to the marijuana but supported finding that Hardy intended to distribute it. Hardy admitted that he was a "two ounce" man, which is someone who buys two ounces of marijuana at a time, divides it, and sells it. Along with the marijuana and the hair clippers, law enforcement officers found a digital scale in the black bag. Later test results found marijuana residue on the digital scale. Hardy's confessions and the digital scale reveal that Hardy not only possessed the marijuana for his own use but intended to distribute it.

Hardy does challenge the sufficiency of the evidence that he possessed a firearm as a felon for Count 3 and that he possessed a firearm in furtherance of drug trafficking for Count 4. When considering whether sufficient evidence exists to sustain a conviction, "'our role is limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support' the conviction." *United States v. Kelly*, 510 F.3d 433, 440 (4th Cir. 2007) (quoting *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997)). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). If we find overwhelming evidence of guilt so that no prejudice results from failing to provide an instruction under § 3501(a), then there was also substantial evidence to sustain the convictions. There was overwhelming evidence supporting the guilty verdicts on Counts

3 and 4, so Hardy failed to lift the "heavy burden" in arguing the jury lacked sufficient evidence to convict. *See United States v. Wolf*, 860 F.3d 175, 194 (4th Cir. 2017).

To begin, there was plenty of evidence to support Hardy's conviction on Count 3 for possession of a gun by a felon. First, the parties stipulated that Hardy was a felon. And Hardy admitted he kept the Glock for eight months in a car he was driving and knew the gun's caliber. This control is the essence of possession. *See United States v. Penniegraft*, 641 F.3d 566, 572 (4th Cir. 2011). The Glock was found near Hardy's cell phone, further suggesting that it was his. Additionally, in Hardy's recorded jail calls, he tried to persuade Little Kenny to claim ownership of the gun since Little Kenny was not a felon who could be prosecuted. Such "false exculpatory statements are evidence—often strong evidence— of guilt." *Baxter v. Commissioner*, 910 F.3d 150, 167 (4th Cir. 2018) (quoting *Al-Adahi v. Obama*, 613 F.3d 1102, 1107 (D.C. Cir. 2010)). Similarly, in another recorded jail call, Hardy's son suggested that he could say the guns were his. Hardy seemed to at first agree, saying that his son "could if [he] want[ed] to," before realizing that likely would not work since his son was not at the apartment when the guns were seized. GX 20-1. All evidence considered, Hardy's conviction for being a felon in possession is amply supported by the record.

Finally, there was more than sufficient evidence to show that the possession of the Glock furthered a drug-trafficking crime (here, possession with intent to distribute marijuana), as required by Count 4. To find that a firearm was possessed "in furtherance" of a drug-trafficking crime, the government must present evidence that the firearm "furthered, advanced, or helped forward" the drug-trafficking crime. *United States v.*

11

*Lomax*, 293 F.3d 701, 705 (4th Cir. 2002). Finding drugs and firearms in a residence used to sell drugs supports a finding that the firearms were being used in furtherance of a drug trafficking crime. *Penniegraft*, 641 F.3d at 573–74. As established above, Hardy was present in a house with drugs that belonged to him, and his phone was found near the loaded Glock. And also found not far from the Glock was Hardy's bag containing marijuana, plastic baggies, and a scale with marijuana residue, all signs of drug trafficking. In the same room as the loaded Glock, police located important personal documents of Hardy's, including his social security card, conditional employment offer, DMV notification, and mail, further connecting him to the items in the vicinity. There was also evidence that Hardy did not live at the Marshall Avenue residence. This further suggests that he possessed the Glock in furtherance of a drug-trafficking crime, because this would mean that Hardy did not just store the gun in his house but must have brought the loaded gun to a residence along with the drugs that he intended to distribute. All told, this strongly suggests that he possessed the guns "in furtherance" of his drug crimes.

Together, the foregoing points convince this Court that Hardy did not satisfy the third prong of plain-error review. The physical and confession evidence against Hardy was substantial, and a § 3501(a) instruction would not have affected the proceedings given the instructions provided and Hardy's failure to meaningfully challenge the truth of his confessions. Moreover, the substantial evidence of guilt means that Hardy's sufficiency challenges likewise fail.

\*                    \*                    \*

We find no reversible error in the district court's failure to instruct the jury in accordance with 18 U.S.C. § 3501(a), in the jury finding Hardy guilty of Counts 3 and 4, and in the district court's sentencing procedures and substantive sentence.[4]  The judgment below is therefore

AFFIRMED.

---

[4] Hardy admits that his remaining challenges are foreclosed by precedent, and he is preserving them for review by the Supreme Court.  So we reject his argument that malicious wounding under Virginia Code § 18.2-51 is not a crime of violence under the Armed Career Criminal Act, *United States v. Rumley*, 952 F.3d 538, 550 (4th Cir. 2020) (concluding that a violation of VA. CODE ANN. § 18.2-51 is a violent felony under the Armed Career Criminal Act), and his argument that the district court could not use acquitted conduct in determining his sentence, *United States v. Lawing*, 703 F.3d 229, 241 (4th Cir. 2012) ("[A] district court may consider conduct of which a defendant has been acquitted if the conduct has nonetheless been proved by a preponderance of the evidence.").

13