**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-4076**

UNITED STATES OF AMERICA,

           Plaintiff - Appellee,

    v.

DELTON EUGENE WARREN,

           Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  Louise W. Flanagan, District Judge.  (7:17-cr-00121-FL-1)

Argued:  October 29, 2021           Decided:  January 7, 2022

Before WILKINSON and AGEE, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  Mark A. Jones, BELL, DAVIS & PITT, PA, Winston-Salem, North Carolina, for Appellant.  Chad Eric Rhoades, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Robert J. Higdon, Jr. United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, for Appellee

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Delton Eugene Warren appeals a final judgment of conviction from the Eastern District of North Carolina on multiple grounds. Warren first asserts that the district court erred in denying his motion to suppress because police officers used an unsigned warrant as the basis for their search of his home, automobile, and person. Additionally, Warren contends that his conviction has multiple errors under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), requiring his conviction be vacated. Finally, Warren asks this Court to order a new trial because the district court purportedly erred by failing to give a statutorily required jury instruction regarding the voluntariness of his confession pursuant to 18 U.S.C. § 3501. We affirm the district court's denial of the motion to suppress and the conviction.

I.

A.

On February 22, 2017, Fayetteville Police Department (FPD) officers received information from a confidential source that Warren was selling crack cocaine. Utilizing a confidential informant, the FPD conducted four controlled purchases of cocaine base in February and March 2017 from Warren. FPD officers confirmed the address of Warren's residence. They conducted a trash pull from the garbage at the residence and found several plastic sandwich bags that were torn or had cut corners, marijuana, and mail addressed to Warren. As a result of the controlled purchases and the trash pull, FPD detectives applied for a search warrant for Warren's residence.

The warrant at issue in the instant case is North Carolina's standardized state court warrant, labeled AOC-CR-119. It is a two-sided document with the first side being the actual warrant and the second side being the "warrant application" form. *See* J.A. 43–44. A "NOTE" on the warrant clarifies the difference between the "warrant" and the "warrant application." J.A. 43 ("The issuing official must retain a copy of the warrant and warrant application and must promptly file them with the clerk.") (citing N.C. Gen. Stat. Ann. § 15A-245(b)).

In this case, Detective Bryan Thompkins applied for a search warrant before North Carolina Superior Court Judge Claire Hill. During that application, Judge Hill signed the warrant application side of the AOC-CR-119 form, as well as all eight pages of Detective Thompkins's probable cause affidavit, attached to the form. While she reviewed the packet of documents Detective Thompkins submitted as part of the warrant application, Judge Hill observed that he failed to complete the "Style" or the "in the matter of" section of the warrant. She amended those sections, edited the address of Warren's residence on the warrant side of the AOC-CR-119, wrote the time the warrant was issued as 2:40pm, and initialed her edits. However, Judge Hill did not sign the warrant side of the AOC-CR-119 form.

On April 27, 2017, FPD officers executed the search warrant, finding a 9mm pistol, 156.51 grams of cocaine base, 95.94 grams of cocaine, and $15,273 in Warren's bedroom. Officers arrested Warren and interviewed him after he waived his rights. During the interview, Warren admitted to possessing the drugs and the firearm.

3

On September 21, 2017, a grand jury returned a seven-count indictment, charging Warren in Counts 1–4 with distributing cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); in Count 5 with possessing with intent to distribute more than 28 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); in Count 6 with possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and in Count 7 with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Warren filed a motion to suppress evidence seized from his person, home, and vehicle, contending the search was warrantless because the state court judge did not sign the warrant and that the judge did not otherwise affirmatively "issue" the warrant.

B.

On April 17, 2018, a federal magistrate judge held a suppression hearing. Warren argued that North Carolina law requires "that a state court judge sign a warrant" for it to be valid, citing N.C. Gen. Stat. Ann. § 15A-246(a). The government proffered a statement from Judge Hill, who said that she signed the application for the search warrant and authorized and issued the search warrant. Further, Judge Hill said that her failure to sign the first page, the actual warrant, was "an administrative oversight on [her] part." J.A. 181. The government acknowledged that Judge Hill did not sign the warrant but responded that (1) a judge's signature is not constitutionally required; (2) the affidavit attached to the search warrant was sufficient to support a finding of probable cause; and (3) the deficiency in this case would be subject to the good-faith exception.

4

The magistrate judge ordered supplemental briefing and recommended that the motion to suppress be denied. The judge agreed with Warren that North Carolina law required a signature but concluded that "a violation of state law is not the same as a violation of the Fourth Amendment." J.A. 191. He noted that the text of the Fourth Amendment does not require a signature and recognized the issue of whether a signature is constitutionally required is an issue of first impression within this Circuit. The magistrate judge found that the state court judge possessed sufficient probable cause to issue the warrant and that she intended to issue the warrant.

Warren timely objected to the magistrate judge's report and recommendation. Warren argued that the judge's failure to sign the warrant, coupled with the judge's failure to affirmatively indicate the warrant had been issued, did not reasonably lead to the conclusion that a search warrant had been issued. The district court adopted the magistrate judge's recommendation and denied Warren's motion to suppress. It acknowledged the Fourth Circuit had not addressed the issue, but it followed the First and Tenth Circuits' decisions upholding the validity of unsigned warrants. *See United States v. Lyons*, 740 F.3d 702, 724–25 (1st Cir. 2014); *United States v. Cruz*, 774 F.3d 1278, 1286 (10th Cir. 2014).

Warren then pleaded guilty to Counts 1–5, the controlled substance counts. The §§ 922(g) and 924(c) counts went to trial. On May 8, 2019, a jury convicted Warren of both offenses. The district court sentenced Warren to 78 months' imprisonment for Counts 1–5 and 7, followed by 60 months for Count 6, served consecutively, for a total of 138 months. Warren timely appealed the denial of his motion to suppress, as well as his

5

convictions on the bases of alleged errors under *Rehaif* and alleged errors with the jury instructions.

## II.

We review a district court's factual findings on a motion to suppress for clear error and its legal conclusions de novo. *United States v. Black*, 707 F.3d 531, 537 (4th Cir. 2013). In reviewing the denial of a motion to suppress, "we construe the evidence in the light most favorable to the government." *United States v. Farrior*, 535 F.3d 210, 217 (4th Cir. 2008) (quoting *United States v. Perkins*, 363 F.3d 317, 320 (4th Cir. 2004)).

Because Warren failed to object to the sufficiency of the indictment and the jury instructions on the ground that neither stated he must know he was a felon, as well as the jury instructions regarding the use of confessions, we review these issues for plain error. *United States v. Olano*, 507 U.S. 725, 731 (1993). On plain-error review, we may correct an alleged error when: (1) there was error; (2) the error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 732.

## III.

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, *supported by oath or affirmation*, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. amend. IV (emphasis added).

Warren asserts the district court erred in holding that Judge Hill had "issued" a valid warrant. He argues that there is insufficient contemporaneous evidence of Judge Hill's issuance of a warrant, and, thus, the act of returning an unsigned warrant form to the requesting law enforcement officer is constitutionally inadequate evidence of the warrant's issuance. Whether the lack of a signature on a warrant renders it constitutionally defective is an issue of first impression for this Court.[*] We decline to resolve that issue today and instead affirm under the good-faith exception to the warrant requirement as articulated in *United States v. Leon*, 468 U.S. 897 (1984).

The Supreme Court in *Leon* established a good-faith exception to the exclusionary rule, stating that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id.* at 922. Courts should ask "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23. The Fourth Amendment's "exclusionary rule is designed to deter police misconduct *rather than to punish the errors of judges and magistrates*." *Leon*, 468 U.S. at 916 (emphasis added).

Here, Judge Hill signed the back page of the warrant form (the application) and eight pages of the officer's affidavit, as well as editing and initialing part of the warrant. The officer watched the judge review the probable cause affidavit, sign pages, and edit the

---

[*]The First and Tenth Circuits have upheld the validity of unsigned warrants. *See Lyons*, 740 F.3d at 724–25; *Cruz*, 774 F.3d at 1286.

warrant. This is therefore not a case in which "the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot presume it to be valid." *United States v. Hyppolite*, 65 F.3d 1151, 1156 (4th Cir. 1995) (citing *Leon*, 468 U.S. at 923). Here, the facts do not point to police misconduct—the police had clear probable cause, presented the facts to the judge, and reasonably relied on a mostly signed warrant packet. In such circumstances, it was reasonable for the officer to believe the warrant and the subsequent search were valid. *See, e.g.*, *United States v. Kelley*, 140 F.3d 596, 601–03 (5th Cir. 1998).

Today's holding only applies to the instant facts—we decline to answer the broader question of whether an unsigned warrant is always constitutional or unconstitutional.

IV.

Warren next argues that the district court proceedings violated his constitutional rights regarding his § 922(g) conviction because the indictment failed to allege that Warren knew his "relevant status" under *Rehaif*, violating the Fifth Amendment's requirement that the indictment charge every element of the crime. Thus, Warren believes his § 922(g) conviction should be vacated. We disagree.

In *Rehaif*, the Supreme Court held "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm" to sustain a § 922(g) conviction. 139 S. Ct. at 2200.

In *United States v. Greer*, 141 S. Ct. 2090 (2021), the Supreme Court addressed a situation similar to Warren's in which two defendants were convicted under § 922(g) prior to *Rehaif*. Greer's conviction resulted from a trial during which Greer did not request, and the district court did not give, a jury instruction requiring a finding that Greer knew he was a felon when he possessed the firearm. *Id.* at 2096. The other defendant was not advised of the *mens rea* requirement during his plea colloquy. *Id.* at 2096. The Court found that it was undisputed that *Rehaif* errors occurred in both these cases yet upheld their convictions. *Id.* at 2097, 2100. The Court held that in felon-in-possession cases, a *Rehaif* error is not a basis for plain-error relief unless the defendant first makes a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon. *Id.* at 2100.

Here, *Rehaif* errors occurred, and the errors were plain. However, "[i]n a felon-in-possession case where the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb to satisfy the substantial-rights prong of the plain-error test based on an argument that he did not know he was a felon." *Id.* at 2097. This is because a person with a felony record "ordinarily knows he is a felon." *Id.* at 2097. At trial, Warren's counsel essentially told the jury Warren knew he was a felon, stating in the opening argument that the government "charged him with possession of a firearm by a felon, which he confessed to [ ] in his interview. He had a prior conviction. He knew he wasn't supposed to. But he still had it." J.A. 261. And on appeal, Warren has not made a sufficient showing that he would have presented evidence in the district court that he did not in fact know he was a felon when he possessed the firearm. Thus, under *Greer*, Warren

has not carried the burden of showing that the *Rehaif* errors affected his substantial rights and therefore, under plain-error review, his convictions are affirmed.

V.

Finally, Warren argues that the court erred because the government used evidence of Warren's confession in the trial and the court did not give proper jury instructions regarding the use of the confession. Pursuant to 18 U.S.C. § 3501, if a district court admits evidence of a confession, the district court "shall instruct the jury to give such weight to the confession as the jury feels it deserves under the circumstances." We have held that "whether requested or not, the trial court should instruct the jury specifically upon the law governing the use of a confession and a failure to do so is clear error." *United States v. Sauls*, 520 F.2d 568, 570 (4th Cir. 1975) (internal quotation marks and citation omitted). Thus, Warren asserts his convictions should be reversed.

While we have said that the district court should instruct the jury on the use of a confession, we have also said "reversal will not follow if the failure may be deemed non-prejudicial and harmless." *Id.* at 570. Additionally, we upheld a conviction under similar facts in *United States v. Hardy*, 999 F.3d 250 (4th Cir. 2021). Like Warren, Hardy challenged, for the first time on appeal, the district court's failure to specifically instruct the jury that it should "give such weight to the confession as the jury feels it deserves under all the circumstances" as required by § 3501. *Id.* at 252 (quoting 18 U.S.C. § 3501(a)). We upheld Hardy's conviction as we found that Hardy did not suffer prejudice. *Id.* at 252.

10

A plain error normally affects a defendant's substantial rights if the error was prejudicial, meaning it "affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734. Determining whether an error was prejudicial requires "a specific analysis of the district court record—a so-called 'harmless error' inquiry." *Id.* In this inquiry, the burden of persuasion is placed on the defendant to "'show a reasonable probability that, but for the error' the outcome of the proceeding would have been different," *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004)).

Here, the error in instruction was not prejudicial. Like in *Hardy*, Warren did not meaningfully challenge at trial his confession's voluntariness or veracity, so "there would be little reason for the jury to disbelieve [Warren's] confession." 999 F.3d at 255. Additionally, like in *Sauls*, because the question of voluntariness was never raised by the defendant, "[t]he failure of the trial court under these circumstances to instruct the jury specifically on 'an issue upon which there was no evidence before them' could not be regarded as prejudicial." 520 F.2d at 570 (quoting *United States v. Goss*, 484 F.2d 434, 437–38 (6th Cir. 1973)). Warren himself did not raise the issue of voluntariness or present any evidence that his confession was not voluntary. Yet, Warren contends that the issue was put before the jury because the detective testified that he strategically interrogated Warren. That is not enough to satisfy Warren's burden that the instruction error was prejudicial. *See id.* (where there was "no attempt to dispute any of the testimony offered," the failure of the trial court to give a § 3501(a) instruction "could not be regarded as prejudicial"). Thus, under plain error, we affirm Warren's conviction.

11

## VI.

For the above reasons, the district court's denial of Warren's motion to suppress and Warren's convictions are

*AFFIRMED*.