**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 20-4338**

_____

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

RAMON AVILA DAVILA, a/k/a Raymond,

        Defendant – Appellant.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:19-cr-00112-BO-1)

_____

Argued:  May 4, 2023                                         Decided:  May 23, 2023

_____

Before GREGORY, Chief Judge, KING, Circuit Judge, and MOTZ, Senior Circuit Judge.

_____

Affirmed in part, vacated in part, and remanded by per curiam opinion for further proceedings consistent with this opinion.

_____

**ARGUED:**  Sandra Barrett, Hendersonville, North Carolina, for Appellant.  John Gibbons, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:**  Todd A. Smith, SMITH GILES PLLC, Graham, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, Joshua H. Rogers, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ramon Avila Davila challenges his conviction and sentence for crimes related to drug trafficking and distribution. He argues that the district court failed to comply with the requirements of Federal Rule of Criminal Procedure 11 while conducting his plea hearing, that his 18 U.S.C. § 924(c)(1)(A) conviction lacks a sufficient factual basis, and that his sentence must be vacated. Although the district court did err in failing to comply with many of the requirements of Rule 11, Davila has not demonstrated that the errors prejudiced him or that his 18 U.S.C. § 924(c)(1)(A) conviction lacks a factual basis. We thus affirm his conviction. But we vacate his sentence and remand for resentencing because of the inconsistency between his pronounced and written sentences.

I.

In December 2017, federal agents first learned of Davila's involvement in a drug trafficking organization when they seized marijuana he had distributed to a confidential informant.[1] Two months later, officers stopped Davila for speeding and, in searching his vehicle, found eight pounds of marijuana. Davila then gave the officers consent to search three properties.

The officers found drug trafficking paraphernalia in each of the properties. In the first they found 457 grams of methamphetamine and a kilogram press with cocaine residue.

---

[1] Because Davila pled guilty in a plea agreement containing no written factual statement, the facts within are those proffered by the Government during the Rule 11 hearing and included in the Presentence Investigation Report (PSR). Davila makes no objections to either the Government's proffered facts or the PSR.

During that search, Davila admitted that he had recently used the kilogram press to press five kilograms of cocaine. In the second, the officers found 43 pounds of marijuana. In the third, which Davila identified as his home, they found approximately $14,000 in U.S. currency, a small amount of marijuana, and a handgun located in the master bedroom of the property.

In a written plea agreement, Davila pled guilty to conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and a quantity of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (D), 846 (Count 1); aiding and abetting the distribution of 500 grams or more of cocaine and a quantity of marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), (D) and 18 U.S.C. § 2 (Count 2); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count 3). The plea agreement contained no factual statement, but the Government offered facts at the Rule 11 plea hearing in support of the plea, without opposition from Davila.

At the Rule 11 plea hearing, the district court made more than a dozen errors or omissions. For example, the court did not inform Davila of his right to plead not guilty, ensure that Davila understood the elements of the charges to which he pled guilty, or accurately describe the potential penalties Davila faced. At sentencing, however, the court imposed the sentence upon which Davila and the Government had previously agreed: 160 months' imprisonment and five years of supervised release.

In imposing the conditions of supervised release, the court stated:

> [Davila is] not to violate any federal, state or local law; use or associate with any controlled substance or dangerous weapon; remain gainfully employed; support his dependents; submit to any process from immigration regarding his stay in the United States and otherwise obey the conditions of supervised release that are in force in this district.

The district court then filed a written judgment containing the mandatory conditions of supervised release and 13 standard conditions corresponding to those recommended in the United States Sentencing Guidelines Manual.   The written judgment also contained additional conditions, including a condition that Davila "consent to a warrantless search [of his person and premises] . . . at the request of the probation officer, or any other law enforcement officer."

Davila's counsel filed an appellate brief in compliance with this court's process under *Anders v. California*, 386 U.S. 738 (1967).  After a thorough review of the record, we appointed new counsel for Davila and ordered the parties to brief three issues: (1) whether the district court's errors and omissions in the Rule 11 hearing undermined the validity of Davila's guilty plea; (2) whether a sufficient factual basis supports his guilty plea to the 18 U.S.C. § 924(c) offense; and (3) whether his sentence is procedurally and substantively reasonable.

## II.

We consider first Davila's challenges to his guilty plea and conviction.

## A.

Rule 11 imposes a series of requirements on a district court when accepting a defendant's guilty plea.  Through colloquy with the defendant, the district court "must

4

ensure that the defendant understands the nature of the charges to which the plea is offered, any mandatory minimum penalty, the maximum possible penalty, and the various rights the defendant is relinquishing by pleading guilty." *United States v. Williams*, 811 F.3d 621, 622 (4th Cir. 2016) (citing Fed. R. Crim. P. 11(b)).   The district court must also confirm that the plea is knowing and voluntary and that a factual basis supports the plea. *Id.*

Where, as here, the defendant did not seek to withdraw his guilty plea before the district court, we review the sufficiency of the Rule 11 hearing only for plain error. *United States v. Martinez*, 277 F.3d 517, 524–25 (4th Cir. 2002).  In the context of Rule 11, this standard requires that even if a reviewing court identifies an error that is plain, in order to prevail on appeal a defendant must also "demonstrate a reasonable probability that, but for the error, he would not have pleaded guilty." *United States v. Sanya*, 774 F.3d 812, 816 (4th Cir. 2014) (internal quotation omitted).  The Government concedes that Davila's Rule 11 hearing contained several errors and omissions.  *See* Oral Arg. at 38:40.  And failure to comply with the explicit requirements of Rule 11(b) is plain error.  *See United States v. Massenburg*, 564 F.3d 337, 343 (4th Cir. 2009).  Therefore, the only question at issue with respect to the Rule 11 hearing is whether Davila can demonstrate that absent these errors, "the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *United States v. Lockhart*, 947 F.3d 187, 192–93 (4th Cir. 2020) (en banc) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)).

Davila cannot do so.  Davila began cooperating with the Government immediately after officers apprehended him during a traffic stop.  He waived his rights under *Miranda*

*v. Arizona*, 384 U.S. 436 (1966), and then volunteered information about his drug distribution activities. As his trial counsel stated during sentencing, Davila was "more honest than they were asking for." Davila gave the officers his consent to search three properties used in his drug distribution. He also provided information to the Government about other members of the organization during a debriefing interview after his full confession.

In response to Davila's forthrightness, the Government filed a U.S.S.G. § 5K1.1 motion on Davila's behalf, acknowledging his acceptance of responsibility and cooperation. The Government recommended, and Davila agreed to, a sentence (160 months) substantially shorter than the low end of Davila's sentencing guidelines range (248 months). And although the district court failed to properly inform Davila of the maximum penalties for his crimes, the court imposed a sentence shorter than the potential punishment the court stated at the Rule 11 hearing. *See Martinez*, 277 F.3d at 533 (holding that a misstatement of the maximum penalty did not affect a defendant's substantial rights when he would have been subject to a far greater potential penalty if he proceeded to trial); *cf. Lockhart*, 947 F.3d at 194, 197 (holding that a misstatement of the maximum penalty prejudiced a defendant when, among other things, he was in fact sentenced to a term of imprisonment longer than that described during the Rule 11 hearing).

While the cumulative effect of multiple individually harmless errors may prejudice a defendant to the same extent as a single reversible error, to warrant reversal under the cumulative error doctrine these harmless errors must render the proceeding fundamentally unfair. *United States v. Runyon*, 707 F.3d 475, 520 (4th Cir. 2013). Given the complete

lack of evidence that Davila might have proceeded to trial absent the errors and the significant benefit at sentencing that Davila earned from his cooperation and acceptance of responsibility, we cannot conclude that the Rule 11 errors during Davila's plea hearing prejudiced him in such a manner.

We would be remiss not to note that the lack of compliance with Rule 11, and the very minimal record available to us to evaluate the voluntariness of Davila's guilty plea, is troubling. The Supreme Court has made clear that where there is "no evidence that a defendant knew of the rights he was putatively waiving" by pleading guilty, "the conviction must be reversed." *Dominquez Benitez*, 542 U.S. at 84 n.10 (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). "Such a conviction could [not] be saved even by overwhelming evidence that the defendant would have pleaded guilty regardless." *Id*. Although we have identified several errors in Davila's Rule 11 colloquy, the record as a whole in this case indicates that Davila understood his plea agreement and its consequences.

For example, retained counsel represented Davila before and during the plea hearing, and Davila stated that he was satisfied with his counsel's work. Davila pled guilty in a written plea agreement and confirmed that the court's summary of that agreement was accurate. Davila also confirmed that he was aware of the charges filed against him and he was indeed guilty of those charges. Thus, while the number of Rule 11 errors and the limited record before us establishing Davila's understanding of his plea is concerning, these errors do not rise to a level that requires us to vacate Davila's conviction under *Boykin*. Of course, in another case, Rule 11 errors accompanied with less evidence that the defendant's plea was knowing and voluntary might well require us to vacate a conviction.

7

B.

Davila also argues that an insufficient factual basis supported his guilty plea to a violation of 18 U.S.C. § 924(c)(1)(A) (Count 3). We review the district court's determination of whether a guilty plea has a sufficient factual basis for abuse of discretion. *United States v. Mastrapa*, 509 F.3d 652, 660 (4th Cir. 2007). After a review of the full record, we conclude that a sufficient factual basis supported Davila's conviction on Count 3.[2]

Davila asserts that the lack of written factual statement in the plea agreement prevented the court from finding a sufficient factual basis to support his conviction on Count 3. But "the district court may conclude that a factual basis exists from anything that appears on the record." *United States v. Stitz*, 877 F.3d 533, 536 (4th Cir. 2017). And the court may defer its inquiry into the factual basis until sentencing. *Martinez*, 277 F.3d at 531. Thus, the district court did not need a written factual statement, but rather could satisfy itself of the sufficiency of the factual basis through the facts that were proffered by the Government during the Rule 11 hearing and included in the PSR, neither of which Davila objected to.

---

[2] Davila makes two additional arguments that rely on the initial premise that there was no factual basis to support his conviction on Count 3: that his counsel provided ineffective assistance in allowing him to plead to Count 3 and that his sentence is unreasonable because it includes punishment for Count 3. Because we hold that there is a factual basis for Count 3, and thus affirm his conviction on that count, those arguments necessarily fail.

8

To establish that Davila violated 18 U.S.C. § 924(c)(1)(A), the Government had to provide a factual basis showing that he "(1) committed a drug trafficking offense and (2) possessed a firearm (3) in furtherance of that drug offense." *United States v. Moody*, 2 F.4th 180, 192 (4th Cir. 2021).   Here, the indictment premised the 18 U.S.C. § 924(c)(1)(A) offense, Count 3, on the drug trafficking offense in Count 1.  In considering whether a firearm is possessed in furtherance of a drug offense, the district court may consider facts such as the type of drug offense, the type of firearm, the firearm's accessibility, and the firearm's proximity to drugs and drug profits. *Moody*, 2 F.4th at 192.[3]

The Government proffered facts during the Rule 11 hearing to establish that officers found $14,000 in cash, marijuana, and a .40 caliber handgun in a property where Davila authorized a consensual search.  The PSR provided further detail, clarifying that this was Davila's own residence, and that the handgun was found in the master bedroom.  Both the accessibility of the handgun in Davila's master bedroom and its proximity to the marijuana and cash proceeds could lead to a conclusion that the handgun was possessed in furtherance of the drug crime. *See Moody*, 2 F.4th at 192.  "Finding drugs and firearms in a residence

---

[3] Davila argues that the factual basis supporting Count 3 was insufficient because there is no evidence that he "used" or "carried" the firearm in accordance with the Supreme Court's interpretation of those terms in *Bailey v. United States*, 516 U.S. 137 (1995), *superseded by statute*, Act of Nov. 13, 1998, Pub. L. No. 105-386, 112 Stat. 3469, *as recognized in United States v. O'Brien*, 560 U.S. 218, 232–33 (2010). Davila Br. at 18–20. However, *Bailey* is inapposite here, because Davila pled guilty to *possessing* the firearm, not using or carrying it. We note that in 1998, after the Supreme Court's decision in *Bailey*, Congress amended 18 U.S.C. § 924(c) to criminalize the *possession* of a firearm in furtherance of a drug trafficking offense. *See* Act of Nov. 13, 1998, Pub. L. No. 105-386, 112 Stat. 3469.

9

used to sell drugs supports a finding that the firearms were being used in furtherance of a drug trafficking crime." *United States v. Hardy*, 999 F.3d 250 (4th Cir. 2021). And in staking his challenge to the factual basis on the improper application of *Bailey v. United States*, 516 U.S. 137 (1995), *see* n.3, Davila has failed to argue that the facts proffered by the Government are insufficient to support a conviction for *possessing* a firearm in furtherance of a drug crime. Davila's argument that no sufficient factual basis supported his plea to Count 3 thus fails.

### III.

We next consider Davila's sentence. The Government concedes that Davila's sentence contains a reversible error under this court's precedent in *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), and *United States v. Singletary*, 984 F.3d 341 (4th Cir. 2021). Supp. Resp. Br. of United States at 8. However, the Government argues that Davila has waived a challenge under *Rogers* because he did not raise this argument until prompted to do so in a supplemental briefing order from this court.

The Government's initial concession is well taken. It is clear that the district court imposed at least one condition of supervised release in the written judgment that was not pronounced at sentencing. The written judgment imposed the condition that Davila consent to warrantless searches by the United States Probation Office and other law enforcement officers. The district court did not mention this condition during the sentencing hearing, and thus there is a discrepancy between Davila's oral and written sentences. Under our precedent in *Singletary*, 984 F.3d at 346, the remedy for this error is "to vacate the [entire] sentence and remand for the district court to resentence [Davila]." Accordingly, we need

10

not decide whether any other conditions of supervised release were improperly imposed in violation of *Rogers* and *Singletary*.

The Government's waiver argument finds support in our usual approach, which is to refuse to consider issues not raised in a party's opening brief. *A Helping Hand, LLC v. Baltimore County, MD*, 515 F.3d 356, 369 (4th Cir. 2008). However, "in rare circumstances, appellate courts, in their discretion, may overlook this rule and others like it if they determine that a 'miscarriage of justice' would otherwise result." *Id.* (citing *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 421 (4th Cir. 2005)).

The principles underlying our decisions in *Rogers* and *Singletary* guide our discretion in determining whether to forgive Davila's waiver of this issue on appeal. Those cases hold that resentencing is the appropriate remedy for this type of error because "[d]iscretionary conditions that appear for the first time in a subsequent written judgment . . . are nullities." *Singletary*, 984 F.3d at 344. The oral pronouncement of conditions at sentencing is "not a meaningless formality, but a critical part of the defendant's right to be present at sentencing." *Id.* at 346 (internal quotations omitted). The opportunity for a defendant to object to conditions in open court is essential. *Id.* at 346–47.

Accordingly, we exercise our discretion to forgive Davila's waiver of the *Rogers* error here. A miscarriage of justice that might excuse waiver is most likely to exist "when fundamental rights are involved." *United States v. Davis*, 954 F.2d 182, 187 (4th Cir. 1992). Here, the condition that Davila consent to warrantless searches by law enforcement officers infringes on his most fundamental rights under the Fourth Amendment. U.S. Const. Amend. IV. The district court imposed this significant infringement on Davila's

11

constitutional rights without allowing him the critical opportunity to be present and ensure that the condition is "sufficiently tailored to [his] individual circumstances." *Singletary*, 984 F.3d at 346–47 (internal quotation omitted). Affirming the imposition of such a condition would be a miscarriage of justice. *See Venkatraman*, 417 F.3d at 421.

IV.

The district court committed several errors and omissions during Davila's Rule 11 hearing, but none of those errors prejudiced Davila. Therefore, we affirm Davila's convictions. We vacate his sentence and remand for resentencing because the district court did not orally pronounce the written conditions of supervised release at sentencing, in violation of *Rogers*. Accordingly, the judgment of the district court is

*AFFIRMED IN PART, VACATED IN PART, AND
REMANDED FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS OPINION.*